Stephenson, J.
 

 The Court of Appeals held, and' properly so, as we regard it, that after the superintendent of banks took the Commercial Bank & Savings Company over for liquidation his jurisdiction was exclusive, and the courts of Ohio, from the highest to the lowest, had neither power, right nor jurisdiction to appoint a receiver to take charge of any property of the bank in the hands of the superintendent of banks. The effect of this holding precluded the Woodville Savings Bank Company from asking for a receiver
 
 pendente lite
 
 for the mortgaged real estate, notwithstanding the condition of its mortgage had long since been broken.
 

 We have examined the statutes in controversy herein, namely, Sections 710-95, 710-101 and 11894, General Code, and we are steadfast in the opinion that the Court of Appeals was right in this regard.
 

 The Woodville Savings Bank Company contends, and its contention is not without merit, that the jurisdiction of the superintendent of banks over the mortgaged real estate being exclusive it could not apply to a court for a receiver to take charge of the rents and profits, and that it was not necessary, as it could pursue the superintendent of banks. The mortgagee bank insisted that the superintendent of banks was to all intents and purposes its receiver, and as such was standing in the shoes of the Commercial Bank
 
 &)
 
 Savings Company, and that it was his duty, under all the
 
 *590
 
 facts and circumstances, to collect the rental from the mortgaged real estate and apply it to the payment of the taxes on the particular premises, as the Commercial Bank
 
 &
 
 Savings Company by its covenant in the Franklin deed had agreed to do.
 

 If this contention could be maintained, truly mortgagees would be sitting in the “seats of the mighty.” It was surely the legislative intent that the jurisdiction of the superintendent of banks over all property, real and personal, of a bank taken over for liquidation, should be exclusive. It was not intended that mortgagees would be permitted to practically oust him by having receivers appointed for each tract and, parcel of the bank’s mortgaged real estate. Receiverships are expensive in the superlative degree, and it was for the very purpose of protecting the assets of the bank against the inroads of receiverships that the Legislature gave the superintendent of banks exclusive jurisdiction over the bank’s property.
 

 There was another reason. Time is an invaluable asset in the liquidation of a bank. If indiscriminate receiverships were permitted during the progress of liquidation of a bank, the conscientious superintendent of banks would necessarily investigate the applications and oppose those that lacked merit. Under such a condition of law, he would be a very busy man.
 

 The primary duty of the superintendent of banks is to collect and conserve the assets of the defunct bank for the benefit of
 
 all
 
 its creditors. The right and title of the superintendent of banks to the $700 rental money rose just as high, but no higher, than that of the Commercial Bank & Savings Company, the mortgagor in possession.
 

 Take a hypothetical case. Suppose the Commercial Bank
 
 &
 
 Savings Company, a mortgagor in possession, had collected the $700 rental money and stuck the money in its pocket — rather, its vault — and the Wood-ville Savings Bank Company had brought suit to fore
 
 *591
 
 close, and would set up in its third cause of action the fact that the mortgagor bank had collected $700 in rental money from the mortgaged premises, and had failed to pay taxes as it had covenanted to do, and would pray for a judgment for the taxes charged against the real estate and that the $700 rental money be impressed with a trust in an amount sufficient to satisfy the claim of the state for taxes.
 

 The mortgagor bank would then naturally contend that it was the holder of the legal title, was in possession, that it had a right to the rental money, that it had collected it and mingled it with the other funds of the bank. It would likely say further to the Woodville Savings Bank Company, “You have not paid the taxes. You have parted with nothing.”
 

 Could the court, in the face of such facts, order the mortgagor bank to go into its vault and take out $700, or so much of it as was necessary, and pay the taxes on the mortgaged property?
 

 Equity may travel a long way, but it cannot go down into a man’s pocket and take money that rightfully belongs to him and pay a tax charge of the state because it may become the debt of another; and this is true even though he may have covenanted to pay the tax charge.
 

 If the superintendent of banks finds the bank in possession of mortgaged land that is yielding an income, he owes a duty to the creditors of the bank to collect this income. Why? Because it is property of the bank.
 

 Section 710-101, General Code, permits a receiver for the property of a bank to be appointed, upon notice to the superintendent of banks; and if such officer within five days does not take possession of the bank we see no reason why such receiver cannot proceed to administer the particular property.
 

 We are in accord with the law that “the right to rents and profits of real estate follows the legal title and right to possession.” 55 A. L. R., p. 526, paragraph
 
 *592
 
 11, Section 21. The mortgagor “is entitled to the earnings, rents and profits of the mortgaged property.” 19 Ruling Case Law, 319, Section 96. “Rents and profits are. the incidents of possession of the equity of redemption of the mortgaged property, and may be collected by the owner thereof until the period of redemption expires.” 46 A. L. R., 132, paragraph 4, Section 21;
 
 Winnisimmet Trust
 
 v.
 
 Libby,
 
 234 Mass., 407, 125 N. E., 599, 14 A. L. R., 640;
 
 Williams
 
 v.
 
 Marmor,
 
 321 Ill., 283, 151 N. E., 880, 46 A. L. R., 132.
 

 Authorities supporting this doctrine are practically inexhaustible. Its strongest support is that of reason. It is in perfect harmony with the operation and effect of mortgages. In most cases where the relation of mortgagor and mortgagee exists, the mortgagor has not only the right to possession, but actual possession. He must have the possession, the use and the usufruct of the land, else he cannot satisfy his mortgage.
 

 The question of the application of the doctrine of laches in this case is urged by the superintendent of banks. Defendant contends that the question was not raised in the courts below. Having found that there is no liability on the part of the superintendent of banks, we do not deem it necessary to pass upon this question.
 

 The judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Allen, Jones and Matthias, JJ., concur.