Hart, J.
 

 The question for determination in this case is whether the bank created or participated in the creation of a trust and in the sale to the public of participation certificates under such trust in property upon which it had a mortgage inadequately secured, for the purpose of liquidating such mortgage lien through the proceeds of the sale of such certificates. If the answer is in the affirmative, the principles announced in the case of
 
 Ulmer
 
 v.
 
 Fulton, Supt. of Bks.,
 
 129 Ohio St., 323, 195 N. E., 557, 97 A. L. R., 1170, apply, to the effect that a bank or trust company is not authorized to create trusts out of its own property or property in which it has a substantial interest, or to sell participating land trust certificates therein to the public.
 

 It is self-evident that the answer to the query depends upon the interpretation to be placed upon the undisputed facts presented in this case. The trial judge who heard the case in the Common Pleas Court upon an agreed statement of facts found that on a basis of form the bank, while holding the legal title to the real estate in question, attempted to create a trust therein, became at the same time settlor and trustee, and then proceeded to sell the trust certificates to the public; and, on the basis of substance, the trial judge found that the respective interests of the bank and the land company in the transaction were withheld from the public, that the paramount interest on the part of the bank was to secure the repayment of its loan from the proceeds of the sale of the certificates, and that it assisted in such sale but again withheld information which it had and which the purchaser was entitled to
 
 *215
 
 have from it as trustee concerning the property which was the basis of the security for the certificates so sold.
 

 The master appointed by the Court of Appeals reheard the testimony in great detail and summarized his findings, in part, as follows:
 

 “The Ontario Street Land Company and The Union Trust Company were actively engaged in the business of creating land trust issues for their mutual benefit. The Ontario Street Land Company found the property, the bank lent the money for its purchase and took title in preparation for declaring itself trustee when the money was forthcoming to pay its loan. Several prospective issues were in the process of creation simultaneously. The bank’s business was lending money and as a trust company in acting as trustee, legitimate activities when exercised separately but fraught with danger when combined in one enterprise — danger, not to the bank, but to the
 
 cestuis que trust
 
 to whom the certificates were sold. * * *
 

 “"While it cannot be said that the bank originally found itself holding a bad loan and contrived the land trust issue on the Cusack parcel to bail itself out, there is no doubt that after the land trust issue was fully planned and partly consummated in the early part of 1926, the bank pumped additional sums of money into the picture relying upon the sale of the land trust issue for reimbursement, that advantage was taken of the setup in May 1926, to make the $40,000 loan without added security, to enable Mr. Nutt, the bank’s president, to obtain payment for the sale of his Florida residence and in July 1926, to inflate the loan to $240,000 without new security, thus procuring payment to the bank of the $36,000 loan of The National Commercial Credit Corporation and advancing $46,003.37 more to The Ontario Street Land Company — all in evident anticipation of receiving the proceeds of the sale of the land trust certificate issue. There then was a period from July 21, 1926 (the date of the $240,000 loan), to
 
 *216
 
 October 13, 1926 (tbe date of the sale of the land trust issue), when the bank had got itself into an overextended position, its loan was inadequately secured— transfer of the loan on real estate only from the real estate loan department to the collateral loan department was an indication of the inadequate security — and it was then of prime importance to the bank to have the land trust certificates sold. The bank then declared itself trustee of. the Cusack parcel passing its own property into the trust estate, its own property because in equity it had a mortgage on the Cusack parcel, a property right which the bank itself seems to have valued at $150,000.”
 

 This court has made an independent examination of the record and is unable to agree with the finding of facts made by the Court of Appeals and consequently unable to follow its conclusions of law. The defendants claim that the principles enunciated in the case of
 
 Ulmer
 
 v.
 
 Fulton, supra,
 
 do not apply here for the reasons (1) that the bank did not create the trust; (2) that the trust was not created out of the bank’s property and (3) that the bank did not sell any certificates of the trust issue. These claims will now be noticed.
 

 There is ample evidence in the record that the bank was in the trust business and was active in the creation of this trust. For some time it had collaborated with the land company in the creation of similar trusts. The land company in this case, as in others, found the properties to become the security for the trusts, but the bank furnished the entire purchase price as a loan, taking title in its own name until such time as the trust could be created and the securities sold. Its own attorneys assisted in the preparation of the legal documents. It became the trustee of the trust and executed the certificates under its own name as trustee. In fact, the bank in its answer in this case admits that it created the trust. The officers of the land company cooperated, but the bank was the moving spirit in the matter and bore
 
 *217
 
 tiie entire financial responsibility. It is quite evident that it did not enter into this transaction for the purpose of a loan to the extent of the full purchase price of the property, but only with the purpose of recouping its money by the creation of the trust, becoming the trustee and operating the trust as a part of its business. On no other rational basis, than that it entered into the arrangement for the purpose of creating a trust, can its conduct be explained.
 

 What interest did the bank have in this property1? As a matter of form, it became the owner of the fee and furnished the full purchase price for its acquisition. If it took the fee title in lieu of a mortgage to secure a loan which it made to the land company for the purchase price of the property, it well knew that it was violating the banking laws of this state. Section 710-112, General Code, provides that: “Loans by banks upon mortgage notes shall be made upon first mortgage upon real estate situated in this state, or in states contiguous thereto, and shall not exceed forty per cent (40 per cent) of the value of such real estate if unimproved and sixty per cent (60 per cent) of such value if improved. * *
 

 A series of transactions occurred by which the bank’s loan on this and other property was increased to $240,-000. It was decided that at least $150,000 of this amount should be secured by the Cusack parcel which after-wards became the trust property. This was far in excess of the purchase price of the property. Up to this point the land company did not have a dollar of its own invested in the property. It had no equity unless the property could be marketed for more than $150,000. The security was evidently unsatisfactory to the bank. It evidently regarded its loan as inadequately secured, at least it was not such a loan as the state banking department could approve under the law. It is significant also that the trust certificates were not purchased by the bank either for itself as an investment or for any of
 
 *218
 
 its trusts, but were sold to the public which was unacquainted with their origin and history. It seems to the court that the bank had such a substantial and well-nigh exclusive interest in the property that in creating and disposing of the certificates it was transferring its own property to others through the medium of a trust. The interest of the land company was only nominal at the time the issue was created, and only became substantial when the certificates were sold for a sum which, under all the facts, appeared to be approximately 50 per cent greater than the real value of the property.
 

 A trustee must not sell to himself as trustee, property in which he has a personal interest of such substantial nature that it might affect his judgment. Restatement of Law of Trusts, 435, Section 170, comment
 
 h; Cornet
 
 v.
 
 Cornet,
 
 269 Mo., 298, 323, 190 S. W., 333. He may pay off to himself indebtedness secured by lien on the property only provided such debt is not in distress or inadequately secured.
 
 In re Estate of Binder, ante,
 
 26, 36. He cannot purchase for the trust, property which he owns jointly with others.
 
 Magruder
 
 v.
 
 Drury,
 
 235 U. S., 106, 59 L. Ed., 151, 35 S. Ct., 77. What a fiduciary may not do singly he may not participate in doing. C
 
 ox, Admr., v. John,
 
 32 Ohio St., 532;
 
 Magruder
 
 v.
 
 Drury, supra.
 

 The defendants claim that before any land trust certificates were issued by the trustee, a sum more than sufficient to secure the release of the lien of the bank upon the premises was paid into the escrow of which the bank was escrow agent; that when the sum of $150,-000, upon the order of the land company, was paid to the bank by itself as escrow agent, its lien upon the premises in question was released and a certificate for the entire number of trust shares was issued by the bank as trustee to the land company as beneficiary; that then and only then did the land trust indenture become operative; and that as a consequence, at the time the trust in question became effective, the bank had no
 
 *219
 
 interest in the premises which constituted the corpus of the trust, except as trustee under the trust indenture.
 

 However, the fact is that simultaneously with the surrender of its lien on October 13,1926, the bank received and knew it was receiving on its loan the sum of $150,-000 directly or indirectly from the individual certificate holders who purchased the certificates and who were becoming its beneficiaries under the trust. These facts are established by written instructions given to the bank’s trust department by its vice president in these words: “Deliver one certificate for the whole 456 shares to The Ontario Street Land Company. It will assign to Collins company, who will have reissued, putting up with loan, ’ ’ and by the admissions of its own answer in this case that “prior to August 1st, 1926, the date of said agreement and declaration of trust, The Ontario Street Land Company, the equitable owner of said land, owed said bank the sum of two hundred forty thousand ($240,000) dollars which it had theretofore borrowed from the bank and which was then unpaid and
 
 that out of the proceeds of the sale of said land trust certificates by the underwriter,
 
 it, as escrow agent, as aforsesaid, disbursed said funds by applying one hundred fifty thousand ($150,000) dollars thereof upon said obligation of two hundred forty thousand ($240,000) dollars and paid substantially all of the balance to The Ontario Street Land Company:” (Italics ours.)
 

 The record shows that the bank was financially interested in the issuance and disposal of the certificates and applied the money arising therefrom to the liquidation of its loan. The whole record discloses a clear case of self-dealing and a lack of loyalty to the beneficiaries of the trust for which the bank was trustee. It well knew that these certificates were being sold to the purchasing public at prices which were above the value of the securities upon which they were predicated and
 
 *220
 
 that it was profiting thereby in the liquidation of its loan.
 

 The Court of Appeals held that the plaintiff could not maintain a class suit for others as well as himself, unless authority was shown in him from such others to file their claims with the Superintendent of Banks and 'to represent them in the action to declare the transaction void. Class suits are allowed where the parties are numerous or have a common interest or both. Where a number of persons have separate and individual rights of action against the same party but all such rights of action arise from a common source and represent a like interest, the whole matter may be litigated in a single suit brought by all claimants as co-plaintiffs, or, in case the parties are numerous making it impracticable to bring them all before the court, by one or more of them suing for himself or themselves and on behalf of the others. When Haggerty brought this suit to set aside the transfer by the trustee of the common fund from the sale of certificates to. the purchase of property now held in the trust, his interest in so acting was common to that of every other certificate holder in protecting the fund in which each had a proportionate share, and in having the trustee restore the fund received from the certificate holders against which each certificate holder may assert his individual right.
 
 Ulmer
 
 v.
 
 Fulton, supra; Peterson
 
 v.
 
 Donnelley,
 
 33 Cal. App. (2d), 133, 91 P. (2d), 123;
 
 Pacific American Gasoline Co. of Texas
 
 v.
 
 Miller
 
 (Tex. Civ. App.), 76 S. W. (2d), 833;
 
 Black
 
 v.
 
 Elkcorn Coal Corp.,
 
 233 Ky., 588, 26 S. W. (2d), 481.
 

 The judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Weygandt, C. J., Zimmerman and Matthias, JJ., concur.
 

 Day and Williams, JJ., dissent.