Turner, J.
 

 This is a proceeding in mandamus filed originally in this court on April 27, 1944.
 

 
 *351
 
 To avoid what otherwise might require repetition for clarity, we shall omit a separate statement of fact and attempt to set ont in this opinion snch facts only as are necessary for an understanding of our immediate law questions.
 

 ■ While we have for consideration here only the pleadings in the instant ease those pleadings have introduced into the instant case not only the entire record in what will hereinafter be referred to as the
 
 Hart case
 
 but some of the proceedings in the Common Pleas Court of Cuyahoga county in case No. 392938 on the civil appearance docket of that court entitled: “In the Matter of the Liquidation of The Union Trust Company, Cleveland, Ohio.”
 

 By the petition in this case a writ is sought commanding the Superintendent of Banks to treat as void a trust whereby The Union Trust Company declared itself trustee for purchasers of certificates of equitable ownership in certain Cleveland real estate known as the Citizens Building, theretofore owned and once occupied by the trust company. The relators are persons who purchased from the trust company, or later acquired from original purchasers, land-trust certificates of equitable ownership in such Citizens Building. Under the aforesaid trust arrangement the trust company issued a total of 2,000 shares all of the certificates for which were sold between August, 1924, and April 12, 1927.
 

 The named relators are the same1 persons who were the named plaintiffs or intervening plaintiffs in case No. 519986, filed January 20,1942, in the Court of Common Pleas of Cuyahoga county against William L. Hart, Superintendent of Banks of the state of Ohio in charge of the liquidation of The Union Trust Company, The National City Bank of Cleveland, as trustee under the agreement and declaration of trust dated August 15, 1924, The Union Trust Company and Union Properties, Inc.
 

 
 *352
 
 The original plaintiffs in the
 
 Hart case
 
 were Willard C. Stanley and John C. Lincoln, as guardian. In answer to interrogatories asking the amounts of their interests in the trust in question and the date acquired, Stanley said that he was the owner of 1/2000 share purchased September 30,1941, for which he paid $335, while Lincoln, as guardian, answered that he had purchased 132/2000 shares between July 22, 1939, and September 29,1941, at a total cost of $54,840.00* or an aver-' age of approximately $415.45, and personally held 12/-2000 shares which.were purchased in the open market, ten of them on November 28, 1933, for $3,500, and two on May 1, 1934, for $1,020.
 

 After the petition was filed in the
 
 Hart
 
 case, Cary R. Alburn, as trustee, with 5/2000 shares acquired in 1928, Helen E. Bing, as trustee, with 10/2000 shares and The Cleveland Punch & Shear Works Company with 150/-2000 shares, 100 acquired September 15, 1924, and 50 on October 4, 1924, became intervening plaintiffs. On August 10, 1933, The Cleveland Punch
 
 &
 
 Shear Works Company signed a consent to the transfer of the trust to The National City Bank.
 

 The transfer of the trust property to The National City Bank was made by order of the Court of Common Pleas on October 17, 1933, and deed executed and delivered on October 31, 1933.
 

 The McIntyre Act, Section 710-92a, General Code, became effective April 21, 1937.. The time limit for filing claims in The Union Trust Company liquidation was July 17, 1937.
 

 On July 17, 1937, Helen E. Bing, as trustee, filed a claim in “In The Matter of The Liquidation of The Union Trust Company” in respect of trust certificates on five different properties, alleging breach of trust. However, no mention was made therein of the interests held by her as trustee in the Citizens Building trust.
 

 The
 
 Hart case
 
 was decided adversely to plaintiffs by the trial court. Upon appeal to the Court of Appeals of
 
 *353
 
 Cuyahoga county the case was tried
 
 de novo
 
 resulting in a judgment in favor of defendants which judgment was later affirmed by this court in case No. 29520, 142 Ohio St., 528, 53 N. E. (2d), 197. The complete record of that cáse, which will hereinafter he referred to as the
 
 Hart case,
 
 is a part of respondent’s answer in the instant case. Both of the foregoing cases were brought on behalf of all certificate holders.
 

 A motion was filed in the instant case by the National City Bank which was sustained and that respondent was dismissed.
 

 The demurrer of the Superintendent of Banks in the instant case was overruled.
 

 An answer and reply were filed in the instant case and thereupon the respondent superintendent filed a motion for judgment on the pleadings. Lacking the necessary majority of the Supreme Court to pronounce a decision upon such motion, it stood overruled. Thereafter this court granted a rehearing on that motion. Belators then filed their motion for judgment on the pleadings.
 

 Therefore the questions before the court at this time arise on: (1) Respondent’s motion for judgment on the pleadings filed March 15, 1945; and (2) relators’ motion for judgment on the pleadings filed January 18, 1946.
 

 Section 2 of Article IV of the Ohio Constitution as amended November 7, 1944, provides in part:
 

 “If any of said judges shall be unable, by reason of illness, disability or disqualification, to hear, consider and decide a cause or causes, the chief justice, or, in case of the absence or disability of the chief justice, the judge having the longest period of service upon that court, may direct any judge of any court of appeals to sit with the judges of the supreme- court in the place and stead of the absent judge. The judge of the court of appeals so designated shall temporarily perform
 
 *354
 
 the duties of a judge of the supreme court as to such cause or causes designated. A majority of the supreme court shall be necessary to constitute a quorum or to pronounce a decision, except as hereinafter provided.”
 

 Two of the judges of this court being unable by reason of disqualification to hear, consider or decide this cause, the Chief Justice, with the approval of all participating members of this court, directed the Hon. Simon Boss and the Hon. Stanley Matthews, judges of the Court of Appeals for the First Appellate District of Ohio, to sit with the judges of the Supreme Court in place and stead of the absent members. Counsel for both the relators and respondent agreed that the case might be thus submitted to the court as so constituted.
 

 Despondent’s motion for judgment on the pleadings is based upon the grounds:
 

 “I. Belators have no beneficial interest in the relief sought and are without legal capacity to maintain this action.
 

 “(a) The prior judicial determination that no certificate holder is entitled to relief in respect of the Citizens Building land trust is final and conclusive and precludes the relators from obtaining such relief in this or any subsequent action. * * *•
 

 “II. The extraordinary remedy of mandamus should not be granted because no beneficial results would flow from the issuance of the writ. * * *
 

 “III. Belators are not entitled to the extraordinary remedy of mandamus, because they have or had other plain and adequate remedies in the ordinary course of the law. * * *
 

 “ (a) The Banking Act provided the certificate holders with plain and adequate remedies against the bank in liquidation. * * *
 

 “IV. The law does not specially enjoin any duty
 
 *355
 
 upon the Superintendent of Banks to do the things' relators seek to compel him to do. * *'*
 

 “(a) There is no authority or direction in law to the Superintendent of Banks, in his general capacity as superintendent rather than as liquidator of the bank to do the things relators want done. * * *
 

 “ (b) There is no duty specially enjoined by law upon the superintendent, as liquidator of the bank, to do the things relators want done. * * *
 

 “(c) Under specific statutory provisions the surrender of assets of banks in liquidation and the allowance of claims duly filed are within the discretion of the Superintendent of Banks and the liquidating court, subject to judicial review. * * *
 

 “(d) The Superintendent of Banks is estopped from asserting that this trust is invalid and from seeking recovery of the trust property. * * *
 

 “V. An action in mandamus is not the proper proceeding for the trial of the many complex questions of law and fact presented by the pleadings in this case. * * * '
 

 “VI. This action is barred by the Statute of Limitations and relators’ laches.”
 

 Relators’ motion for judgment on the pleadings is based upon the grounds that:
 

 “I. Respondent has admitted all of the material facts supporting relators’ cause of action. * * *
 

 “II. Respondent’s affirmative defenses are not valid in law. * # *
 

 “A. No action or inaction on the part of any of the parties can validate this trust. * * *
 

 “B. The defense of
 
 res judicata
 
 is untenable. * * *
 

 “C. The question here is one of public rather than private right. * * *
 

 “D. Defense of adequate remedy at law already decided adversely to respondent.”
 

 
 *356
 
 The answer, after admitting the substance of the petition except the invalidity of the trust and the averments alleging dereliction of duty by respondent superintendent, sets up ten defenses, in the second of which will be found the following language:
 

 “The subject matter involved in the instant case, to wit, the creation of the Citizens Building land trust and the issuance and sale of Citizens Building land trust certificates, is the same as the subject matter involved in said prior action
 
 [Hart case].
 
 The claims and demands of the relators herein (who were the plaintiffs and intervening plaintiffs in said prior action), to wit, to have said land trust set aside as illegal and void, are the same as the claims and demands of the plaintiffs and intervening plaintiffs in said prior action. Likewise, the issues presented in the instant case are the same issues, and with respect to the same subject matter, as those presented in said prior action.
 

 “Said prior action was tried on the merits by the Common Pleas Court of Cuyahoga county, Ohio, and thereafter, on October 13, 1942, the Common Pleas Court entered judgment denying the relief sought and dismissing the petitions of the plaintiffs and intervening plaintiffs. All of said plaintiffs and intervening plaintiffs took an appeal from said judgment to the Court of Appeals for the Eighth Judicial District of this state. Said appeal was an appeal on questions of law and fact and was known as case No. 19,058 on the dockets of said court. Said prior action was tried
 
 de novo
 
 in the Court of Appeals, but by stipulation of the parties and with the approval of the court the ease was submitted to the court upon the transcript of the docket and journal entries in the Common Pleas Court, the pleadings in the Common Pleas Court and the evidence submitted to the Common Pleas Court. Thereafter, on March 18,1943, the Court of Appeals entered final judgment in which it found that the action was
 
 *357
 
 a class action brought by the holders of certain Citizens Building land trust certificates for and on behalf of all owners and holders of any of said certificates, and in which the court denied the relief sought arid dismissed the petitions of the original plaintiffs and the intervening plaintiffs. A.11 the plaintiffs and intervening plaintiffs took an appeal to the Supreme Court of Ohio from said judgment of the Court of Appeals and the Supreme Court received the case for hearing on the merits, the case being known as case No. 29,520 on the dockets of this court. Said ease was heard on its merits and thereafter, on February 9, 1944, said judgment of the Court of Appeals was affirmed. Subsequently, on April 5, 1944, the application of the plaintiffs-appelIants for a rehearing by this court was denied.”
 

 The reply to the second defense reads:
 

 “Relators admit that an action was filed in the Common Pleas Court of Cuyahoga county substantially as alleged in paragraph 11 of the answer of the superintendent and that said action was tried before the Court of Appeals of Cuyahoga county and the Supreme Court of Ohio and resulted in a judgment for the defendants. Relators aver that the judges of the Supreme Court were evenly divided in their opinion in said action, as a result of which the judgment of the Court of Appeals was affirmed pursuant to Article IV, Section 2, of the Constitution. Relators further admit that the two volumes of the printed record attached as exhibits A and B to the superintendent’s answer are accurate copies of the record of that suit.
 

 “Relators deny that the said suit or the judgment, therein are
 
 res judicata
 
 of either the cause of action or of any of the issues in the within action.
 

 “Relators aver that one of the essential issues of the within action is the invalidity of the Citizens Building Land Trust and that the Court of Appeals in the said other action expressly refrained from adjudicating the
 
 *358
 
 invalidity of said trust, stating in its journal entry (Supreme Court record, Exhibit A to superintendent’s answer herein, Volume I, page 130) :
 

 “ ‘ (4) Upon the issues joined, that even if the trust created by The Union Trust Company in 1924 was originally invalid, which question this court does not decide * * V
 

 “Relators deny that the Court of Appeals adjudicated the issue of the duty of the superintendent to set aside the trust for the reason that such duty could arise only if the said trust was invalid and the Court of Appeals deliberately refrained from deciding the invalidity of the trust.
 

 “Relators aver that the judgment in said other suit was not rendered upon the merits of the cause of action therein but was decided solely upon procedural grounds.
 

 “Relators aver that the cause of action in the within suit is one belonging to the State of Ohio to compel its public official, the Superintendent of Banks, to do his duty to execute the banking laws of the State of Ohio and to preserve sound banking practices for the benefit of the public at large; that the cause of action in said other suit was one belonging to certificate holders to enforce their personal claims as creditors of The Union Trust Company in liquidation.
 

 . “Relators aver that the parties defendant in the two actions are different; that in the within cause the defendant is the Superintendent of Banks of the State of Ohio in his general capacity in which he is vested with the right and duty to enforce the police powers of the state to preserve sound banking practices; that in the other suit the defendant, described as ‘The superintendent in charge of the liquidation of The Union Trust Company,’ was sued in his limited capacity as. statutory liquidator or receiver of The Union Trust Company.
 

 
 *359
 
 “Belators aver that the parties plaintiff in the two actions are different in that the plaintiff in the within suit is the State of Ohio seeking to enforce its cause of action against the Superintendent of Banks, whereas the plaintiffs in the other suit were the certificate holders seeking to enforce their personal cause of action against The Union Trust Company.
 

 “Belators deny that paragraph 16 of the answer of the superintendent states accurately the ruling of the court in
 
 Stanley
 
 v.
 
 Hart.
 
 Belators further state that even if said allegations be true, which relators deny, that they are not
 
 res judicata
 
 upon any of the issues in this action.
 

 “Belators deny each and every other allegation which does not constitute an admission of allegations made in the petition for mandamus.”
 

 It will be noted that the relators admit that exhibits A and B attached to the superintendent’s answer are accurate copies of the record in the
 
 Hart case.
 

 Much of relators’ petition and reply is devoted to the claim that the trust is void. We do not reach that question in this case.
 

 In the
 
 Hart case
 
 the judgment of the Court of Appeals for Cuyahoga county was affirmed by the following entry to be found in 142 Ohio St., 528:
 

 “It appearing that the judges of the court are equally divided in opinion as to the merits of this case (one judge not participating) and are for that reason unable to agree upon a judgment, and the entry of that fact constituting an affirmance of the judgment of the Court of Appeals, it is ordered that that judgment be affirmed. ’ ’
 

 In the
 
 Hart case,
 
 plaintiffs, who alleged that they were the owners of land-trust certificates evidencing proportionate ownership in the property known as the Citizens Building, Cleveland, sought to have the transaction declared void whereby The Union Trust Com
 
 *360
 
 pany settled the title to such property upon itself as trustee. It was alleged that The Union Trust Company had made a large profit in the sale of 2,000 equal shares of equitable ownership and bexxeficial interest in such property. In addition to seeking to have the aforesaid transaction declared void on the ground of self-dealing and disloyalty oxx the part of the bank as trustee, plaintiffs sought a judgment in the sum of $2,000,000 with interest and further sought to require the Superintexident of -Banks to allow a gexxeral claim in their behalf for such sum. It was further sought to require the Natioxial City Bank of Cleveland, a defendant, to which institution the trusteeship of the property had been transferred through the liquidation case in the Common Pleas Court, to restore the trust property to the Superintendent of Banks in charge of the liquidatioxx of The Union Trust Compaxxy.
 

 The Court of Appeals’ journal entry in the
 
 Hart case
 
 contains the following recitals:
 

 “ (l)'This is a class actioxx brought by the holders of certain certificates of equitable interest in certain real estate in the city of Cleveland (fully described in the petition), upon which is situated the building commonly called the Citizens Building and formerly kxxown as the Union .Mortgage Building, for and on behalf of all owners and holders of any of said certificates of equitable interest. * * *
 

 “(4) Upon the issues joined, that even if the trust created by The Union Trust Coxnpany in 1924 was originally invalid, which question this court does not decide, the plaintiffs, intervening plaintiffs and the. class which they represent are not entitled to any of the relief claimed in.the petition and intervening petitions by reason of the facts that neither the plaintiffs, the intervening plaintiffs, nor axiyone whatsoever, filed with the Superintendent of Banks in charge of the liquidation of The Union Trust Compaxxy either before,
 
 *361
 
 on or after July 17, 1937 (the last day fixed by the notice published under the McIntyre Act for the filing of claims), a claim setting up, relying upon or asserting any of the claims relied upon or asserted in the petition and intervening petitions herein and that there are no facts excusing or waiving the necessity of filing said claim or claims in compliance with the requirements of the McIntyre Act (O. Gr. C. Sec.
 
 710-92a).
 

 “It is therefore ordered, adjudged and decreed:
 

 “(1) That judgment be, and it hereby is, entered upon the issues joined for the defendants.
 

 “(2) That the relief sought by the plaintiffs and each of the intervening plaintiffs for the class which they represent is denied.
 

 “(3) That the petition of the plaintiffs and the intervening petitions of the intervening plaintiffs be, and each of them hereby is, dismissed.
 

 “(4) That judgment be, and it hereby is, entered against the plaintiffs .and each of the intervening plaintiffs for all of the costs of this action, both in this court and in the Common Pleas Court.
 

 “ (5) That the motion for a new trial filed by plaintiffs and intervening plaintiffs on March 9, 1943, is hereby overruled.”
 

 The record in the
 
 Hart case
 
 discloses that on or about June 15, 1933, the property and business of The Union Trust Company were taken over for liquidation by the Superintendent of Banks.
 

 From the date of the alleged trust settlement until and including December 31, 1932, the lessee of the Citizens Building regularly paid the rents to The Union Trust Company as trustee, and The Union Trust Company as trustee distributed same to the certificate holders (less certain fees reserved in the trust settlement). On April 1,1933, the lessee of the Citizens Building defaulted in the payment of rent. Shortly after the Superintendent of Banks took over The Union Trust
 
 *362
 
 Company for liquidation there was a meeting of some of the certificate holders who formed a committee to look after their interests. This committee recommended to the certificate holders the selection of the National City Bank as successor trustee. The chairman and attorney for this committee was John E. Morley.
 

 The attorney for this committee prepared the application filed in the general liquidating proceedings in the Common Pleas Court in which the superintendent asked authority “To convey the trust estate held by The Union Trust Company under agreement and declaration of trust dated August 15, 1924, between The Union Trust Company and the holders of land-trust certificates of equitable ownership in The Union Mortgage Building property [Citizens Building].” On October 16, 1933, the court formally approved the transfer of the trust property to The National City Bank and appointed it successor trustee. The committee chairman sent a letter to each certificate holder enclosing a form of consent consenting to the transfer of the trust to The National City Bank as successor trustee. Holders of 86.55 per cent of the entire issue consented to the transfer and requested the designation of The National City Bank as trustee. No certificate holder objected. Every certificate holder was notified both by mail and publication of the resignation of The Union Trust Company.
 

 Pursuant to the authority granted by the Common Pleas Court in the general liquidation proceedings the Superintendent of Banks on the 31st day of October, 1933, conveyed the trust property in question to The National City Bank.
 

 On April 24, 1935, this court decided the cases of
 
 Ulmer
 
 v.
 
 Fulton, Supt. of Banks,
 
 Nos. 24996 and 24997 (129 Ohio St., 323, 195 N. E., 557).
 

 The record in the
 
 Hart case
 
 attached to and made
 
 *363
 
 a part of the answer in the instant case discloses that following the
 
 Ulmer case
 
 decision there was a discussion among the certificate holders relative to the validity of the trust created by Union Trust Company out of its own property.
 

 According to a memorandum in the record, “Mr. Morley, in the course of the discussion, indicated his opinion to be favorable to postponement of termination of the leasehold interest, his. express reason being primarily that in the course of another period of time the certificate holders might have more information upon which they could base a determination as to whether they preferred to have a claim against the liquidator of The Union Trust Company or an interest in the land. ’ ’
 

 The record shows the following testimony of a vice-president and trust officer of the National City Bank: “* * * I recall a discussion or discussions with respect to the
 
 Ulmer case
 
 and also further discussions in that meeting as -to the desirability dollar-wise of having land trust certificates in the Citizens Building or having certificates of claim against The Union Trust Company. # * *
 

 “My recollection is that the opinions expressed indicated they [certificate holders] desired to keep the property rather than to claim against the liquidator, and that they were afraid of getting the liquidator to claim the property away from them.”
 

 This situation was summarized by the judge of ihe Common Pleas Court as follows:
 

 “At that time the certificate holders were undecided whether it would be to their best interest to assert the invalidity of the trust on the basis of the rule of law laid down in the
 
 Ulmer case
 
 or be more advantageous for them to retain their interest in the trust property. ’ ’
 

 A guide for our inquiry is to be found in the follow
 
 *364
 
 ing language of Judge Luther Day in
 
 State, ex rel. J. R. Mills & Co.,
 
 v.
 
 Commrs. of Hamilton County,
 
 20 Ohio St., 425, 430:
 

 “It is well settled that before a mandamus will be granted, the applicant must have a legal right, and that a plain dereliction of duty must be established against the officer.”
 

 In support of the foregoing statement the case of
 
 Ex Parte Black,
 
 1 Ohio St., 30, is cited wherein Judge Allen G. Thurman said at page 37: “And it is equally well settled, that before the writ will go to either, a plain dereliction of duty must be established.”
 

 In the case of
 
 State, ex rel. Baen,
 
 v.
 
 Yeatman, Aud.,
 
 22 Ohio St., 546, the opinion of which was written by Judge Luther Day, the first paragraph of the syllabus reads:
 

 “A mandámus will not be awarded in the absence of a clear right, in the party seeking the writ, to the object sought to be obtained by it.”
 

 The foregoing principle has been followed in the case of
 
 State, ex rel. Papadopoulos,
 
 v.
 
 Industrial Commission,
 
 130 Ohio St., 77, 196 N. E., 780, the second paragraph of the syllabus of which reads :
 

 “Mandamus is an extraordinary writ and will not lie unless the claimant can establish a clear legal right thereto.”
 

 In the case of
 
 State, ex rel. Stein,
 
 v.
 
 Department of Highways,
 
 136 Ohio St., 252, 25 N. E. (2d), 285, it was said in the
 
 per curiam
 
 opinion at page 255:.
 

 “A writ of mandamus will be issued only where the - relator establishes a clear legal right thereto. 25 Ohio Jurisprudence, 997, Section 23.”
 

 In the case of
 
 State, ex rel. Skinner Engine Co.,
 
 v.
 
 Kouri, Dir.,
 
 136 Ohio St., 343, 25 N. E. (2d), 940, the first paragraph of the syllabus reads:
 

 “Mandamus is an extraordinary writ and will not
 
 *365
 
 lie unless the claimant can establish a clear legal right thereto.”
 

 To be kept in mind is the principle announced in the case of
 
 Davis, Mayor,
 
 v.
 
 State, ex rel. Pecsok,
 
 130 Ohio St., 411, 200 N. E., 181:
 

 “In proceedings in mandamus a court can not create a legal duty. The creation of a legal duty is a distinctive function of the legislative branch of government. The most that a court can do in mandamus is to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station, when a clear right to such performance is presented.”
 

 Taking up the propositions of law advanced by respondent, to wit:
 

 I. “Belators have no beneficial interest in the relief sought and are without legal capacity to maintain this action. ’ ’
 

 Under Section 12287, General Code, the writ of mandamus may issue on the information of the party beneficially interested.
 

 In the case of
 
 State, ex rel. Brophy,
 
 v.
 
 City of Cleveland,
 
 141 Ohio St., 518, 49 N. E. (2d), 175 we held:
 

 “Where no legal right of a person can be affected by the failure of public officials to act in any given matter, he has no such beneficial interest as will permit him to maintain an action in mandamus against them to require official action in such matter.”
 

 In the case of
 
 State, ex rel. Latta, Chief of Police,
 
 v.
 
 White et al., Industrial Commission,
 
 140 Ohio St., 197, 199, 42 N. E. (2d), 902, it was held:
 

 “Since it does not appear that the relator is beneficially interested in the action sought to be required of the respondents, the demurrer to the petition is sustained and a writ of mandamus is denied.”
 

 No case decided by this court will be found wherein
 
 *366
 
 a peremptory mandamus was awarded in the absence of a showing of interest in the relator either direct or as a taxpayer, elector or citizen.
 

 In their petition relators say:
 

 “Relators are the owners of $298,000 of the convenience par value of land-trust certificates of equitable ownership of the so-called Union Mortgage (Citizens Building) land trust of 'Cleveland, Ohio, hereinafter referred to as the ‘Citizens Building’ trust, and bring this action not only in their own behalf, but on behalf of the other holders of said land-trust certificates, all of whom have a common interest with relators in the questions and subject matter of this action and the relief sought for and are so numerous that it is impracticable to bring them before the court.
 

 “The relators, Willard C. Stanley, Helen E. Bing, Trustee, and Cary R. Alburn, Trustee, are citizens of the State of Ohio and The Cleveland Punch
 
 &
 
 Shear Works Company is a corporation duly organized and existing under the laws of the State of Ohio.”
 

 The effect of the
 
 Hart case
 
 was to deprive the relators permanently of any standing, either legal or equitable, as creditors of The Union Trust Company on account of their holdings of such trust certificates. Whether this court now agrees that the McIntyre Act (Section 710-92o, General Code) is applicable to their claims or that the conclusion of the Court of Appeals was correct or erroneous is now wholly beside the point. The status of the relators as possible creditors of The Union Trust Company, right or wrong, has now been forever determined by that case.
 

 Relators say: “Relators are confident that the rules of recoupment, unjust enrichment and equity will protect and restore the rights of relators once this court orders the alternative writ made permanent.”
 

 Relators seem to overlook that they were in a court of equity in the
 
 Hart case
 
 and failed to get relief.
 

 
 *367
 
 Iii the case of
 
 State, ex rel. Juhlman,
 
 v.
 
 Conners,
 
 122 Ohio St., 355, 171 N. E., 589, in the course of the
 
 per curiam
 
 opinion it was held:
 

 “The writ of mandamus is an extraordinary writ, and will not be issued as a substitute for an existing, adequate, and available remedy in equity or in law, but only where such remedy, in equity or in law, does not exist, is not adequate, or is not available.”
 

 In the
 
 Hart case
 
 the petition sought the following-relief against National City Bank:
 

 “(4) That the defendant National City Bank of Cleveland be required to restore said purported trust property to the defendant the Superintendent of Banks of the State of Ohio in charge of the liquidation of The Union Trust Company and to execute and deliver such deeds or instruments of conveyance, transfer and assignment as may be necessary to vest in him the record title to said property.'
 

 “(5) That the defendant National City Bank of Cleveland be required to account to the defendant, the said Superintendent of Banks, for all moneys and property which have been derived from said purported trust property and not distributed to the certificate holders. ’ ’
 

 Even if there were merit in such contention of relators they would fail because equity aids the vigilant and not the slothful. We see no basis for recoupment on account of unjust enrichment. Unjust enrichment of whom? It could be none other than The Union Trust Company as the
 
 Hart case
 
 held that none of the parties represented by plaintiffs, relators here, were entitled to any of the relief claimed in the petition and the intervening- petitions by reason of the failure to act in time.
 

 Belators claim:
 

 “The order of this court commanding the superin-tendent to set this trust aside will be a binding- adjudi
 
 *368
 
 cation for all purposes, upon the validity of the trust and the duty of the superintendent. It will be binding hereafter not only as to the superintendent, but also by
 
 stare decisis,
 
 upon the National City Bank and the courts. In effect, therefore, this case will afford relators a full and complete remedy.”
 

 Such claim overlooks entirely the fact that not only was the National City Bank a party defendant in the
 
 Hart case
 
 but was as well a party respondent in the instant case whose motion for dismissal was sustained. Relators in plain words are asking this court now to overrule the
 
 Hart case.
 

 Borrowing from relators’ own brief in commenting upon Section 12287, General Code, they say: “This statute is designed to prevent wholesale resort to this extraordinary remedy by those who have no interest affected by the conduct of the official complained of, who might otherwise clog the dockets of the courts. It is not designed to protect the erring official from accusation of those
 
 affected
 
 by his conduct.” (Italics ours.)
 

 In Ohio the right of a citizen to enforce a public duty by mandamus has been recognized. The question arises just what duty is there resting upon the Superintendent of Banks under the peculiar circumstances of this case. Relators have called our attention to no specific statute which clearly and unequivocally places the duty herein sought-to be enforced upon the Superintendent of Banks. Relators in their brief say:
 

 “Relators merely seek to enforce on behalf of the State of Ohio, the duty owed it by the Superintendent of Banks to enforce the public policy,
 
 i. e.,
 
 police power, of the state, in the regulation of banks. ’ ’ The writ of mandamus will not issue to enforce laws- generally.
 

 We can see no public interest' in having this trust set aside when it has been finally and irrevocably decided in the
 
 Hart case
 
 that the
 
 cestuis que trustent
 
 have
 
 *369
 
 no standing as creditors of The Union Trust Company. Assuming the trust be set aside, what would become of the trust assets if they were recovered on behalf of the Union Trust Company? There would, indeed, bo a case
 
 creating
 
 an unjust enrichment, for the relators are barred from any claim against The Union Trust Company.
 

 There is another aspect to be discussed under this head. In the case of
 
 State, ex rel. Galloway,
 
 v.
 
 Industrial Commission,
 
 115 Ohio St., 490, 154 N. E., 736, the Industrial Commission refused to allow a claim upon the ground that it did not come within the purview of the occupational disease statute, nor was there an injury caused by accidental means. An appeal was taken to the Common Pleas Court where a jury was waived and the court found no right of recovery. That judgment was affirmed by the Court of Appeals and a motion was filed in the Supreme Court to certify the record which motion was overruled. Thereafter the plaintiff in the former action, as relator, instituted a proceeding in mandamus. The Attorney General filed a demurrer to the petition urging two grounds: (1) That the matter had theretofore been disposed of by this court; and, (2) that the facts did not warrant a recovery under the record in that case. This court held as follows:
 

 “Taking up the first ground of demurrer, to wit, that the matter has heretofore been disposed of b.y this court, it appears that, after the disposition of cause No. 19676, a motion for a rehearing was filed by the relator on April 16, 1926, and that on May 8,1926, said motion was denied by this court. An examination of .the record discloses that the same questions raised by the petition filed in the instant case were presented in said cause No. 19676, and therein disposed of. It appearing, therefore, that the same subject' matter, between the same parties, having been heretofore adjudi
 
 *370
 
 cated, it cannot be again presented by way of an action in mandamus to compel the allowance of a claim of the relator which had once been denied upon full hearing in said cause No. 19676. It follows, therefore, that the demurrer to the petition must be sustained, and the writ of mandamus denied.”
 

 Here then was a case in which it could be said that the relator was simply asking on behalf of the public that the law be enforced.
 

 In the case of
 
 Gannon
 
 v.
 
 Gallagher, Dir.,
 
 145 Ohio St., 170,171, 60 N. E. (2d), 666, in the course of the
 
 per curiam
 
 opinion it was said:
 

 1 ‘
 
 The appellant had an adequate remedy at law. He availed himself-of that remedy and was not entitled to relitigate the same questions by means of an action for the extraordinary writ of mandamus.” See, also,
 
 State, ex rel. Hess,
 
 v.
 
 Industrial Commission,
 
 133 Ohio St., 599, 15 N. E. (2d), 528, and cases there cited.
 

 In the case of
 
 State, ex rel. Holland et al., Trustees,
 
 v.
 
 Struble, Sheriff,
 
 132 Ohio St., 431, 8 N. E. (2d), 254, it was held at page 432:
 

 “The primary legal question thus presented is so elementary as to require no discussion. The judgment of thé Common Pleas Court was subject to review upon appeal. This action in mandamus constitutes a collateral attack and cannot be maintained.”
 

 II. “The extraordinary remedy of mandamus should not be granted because • no beneficial results would flow from the issuance of the writ. ’ ’
 

 The effect of granting a writ in this case would be to command the Superintendent of Banks in disregard of his statutory instructor (Section 710-95, General Code) to, proceed to bring aii action against the National City Bank to recover the Citizens Building property. Just what statute the superintendent would follow has not been pointed out. Surely not Section 710-95, General Code, for under that statute it is his-duty to follow the
 
 *371
 
 instruction of the Common Pleas Court in case No. 392938, entitled “In the Matter of the Liquidation of The Union Trust Company.” The'trusteeship for the Citizens Building certificate holders had been placed with the National City Bank upon the order of the Court of Common Pleas in the liquidation case and with the consent of the holders of approximately 86 per cent in amount of the certificates. The National City Bank was a successful party both in the
 
 Hart case
 
 and in the instant case and it was held definitely and irrevocably in the
 
 Hart case
 
 that no certificate holder of the class represented by relators here was (or is) entitled to the status of a creditor of The Union Trust Company. In their petition in the
 
 Hart case
 
 plaintiffs (relators here)' alleged:
 

 “* * ’* the Superintendent of Banks did by his conduct and by his verbal and written agreements waive the filing of any other form of claim and the rejection of such claim and the claim described herein, and agreed to a determination in a court of law of the respective claims of the certificate holders and of himself as such Superintendent of Banks. * * *
 

 “The property of said purported trust is impressed with a lien to secure to the certificate holders the payment of the aforesaid indebtedness of The Union Trust Company to said certificate holders.”
 

 In coming to its. decision the Court of Appeals necessarily found against plaintiff's (relators here) on the aforesaid claim.
 

 The successful prosecution by the Superintendent of Banks, whether as above outlined or otherwise, to declare void and recover from the National City Bank the control of the Citizens Building property is, to say the least, doubtful.
 

 As pointed out by Judge Crew in
 
 State, ex rel. Gallinger,
 
 v.
 
 Smith, Aud.,
 
 71 Ohio St., 13, 38, 72 N. E., 300:
 

 “It must now be accepted as a thoroughly well settled
 
 *372
 
 rule, that a peremptory writ of mandamus will not, in any case, he granted, unless the right of the relator thereto be clear, and the act, performance of which is desired, be one of absolute obligation on the part of the person or officer sought to be coerced; and before such writ will be allowed the relator must show not only a olear legal right to have done the specific act desired, but to have it done by the particular person or officer sought to be coerced; and a plain dereliction of duty must be established against such person or officer before the writ will be awarded.”
 

 In the case of
 
 State, ex rel. Hildebrandt,
 
 v.
 
 Stewart,
 
 71 Ohio St., 55, 73, 72 N. E., 307, Judge Davis stated that “the writ of mandamus never could issue in cases of substantial doubt as to the relator’s right.”
 

 III. “Relators are not entitled to extraordinary remedy of mandamus because they have or had other plain and adequate remedies in the ordinary course of the law.”
 

 The only allegation of a plain and adequate remedy contained in relators ’ petition is as follows:
 

 “Relators have no plain and adequate remedy in the ordinary coufse of the law.”
 

 In the case of
 
 Gannon
 
 v.
 
 Gallagher, Dir., supra,
 
 the court said in the course of the
 
 per curiam
 
 opinion:
 

 “Appellant pleaded the legal conclusion that he had no adequate remedy at law, which allegation was not admitted by the demurrer.”
 

 In the case of
 
 State, ex rel. First National Bank, North Baltimore, Ohio,
 
 v.
 
 Village of Botkins,
 
 141 Ohio St., 437, 48 N. E. (2d), 865, we held:
 

 “To entitle relator to a writ of mandamus, the record must disclose affirmatively that there is no plain and adequate remedy in the ordinary course of the law; in the absence of such showing the writ will bo denied.”
 

 
 *373
 
 In the case of
 
 State, ex rel. Bassichis,
 
 v.
 
 Zangerle, Aud.,
 
 126 Ohio St., 118, 184 N. E., 289, it was held:
 

 “Failure of a relator to avail himself of his legal remedy, within the period limited by the statute providing such remedy, does not confer upon him the right to the extraordinary remedy of mandamus.”
 

 In the
 
 Hart case
 
 relators here had a plain and adequate remedy in the ordinary course of the law authorized by Section 710-92 and Section 710-95, General Code. They lost there not because the action was not properly brought but because their claims had not been filed within the time limited by law.
 

 The Banking Act (Section 710-89
 
 et seq.,
 
 General Code) provides a plain and adequate procedure for the liquidation of banks and the determination of all claims arising in the course of such liquidation. See
 
 Commercial Bank & Savings Co.
 
 v.
 
 Woodville Savings Bank Co.,
 
 126 Ohio St., 587, 186 N. E., 444.
 

 In the case of
 
 State, ex rel. Duffy, Atty. Genl., v. Common Pleas Court of Cuyahoga County,
 
 133 Ohio St., 277, 13 N. E. (2d), 233, it was held in the
 
 per curiam
 
 opinion at page 280:
 

 “In
 
 Commercial Bank & Savings Co.
 
 v.
 
 Woodville Savings Bank Co.,
 
 126 Ohio St., 587,186 N. E., 444, this court held that ‘the jurisdiction of the Superintendent of Banks, over the property of a state batik, is exclusive, except in so far as it is limited by Section 710-101, General Code.5 While that is true, so far as the custodianship of the property is concerned, this court has never held that the acts of the superintendent in administering the property are not subject to re.view by the courts. * *
 

 Section 710-95, General Code, specifically authorizes suits in equity where there has been an abuse of discretion by the superintendent. See, also,
 
 State, ex rel. Toledo Theatres & Realty Co.,
 
 v.
 
 Fulton, Supt. of Banks,
 
 124 Ohio St., 360, 178 N. E., 585.
 

 
 *374
 
 In the case of
 
 Ulmer
 
 v.
 
 Fulton, Supt. of Banks, supra,
 
 the statement of the case at pages 328 and 329 shows that in the liquidation case the court had entered orders “authorizing the appointment of successor trustees, but postponed such appointment pending the expiration of time for filing an action under Section 710-95, General Code, in the meantime directing the superintendent to continue with the administration of such purported trusts. Thereupon, Otto G. Ulmer, the plaintiff in error, did file a petition under Section 710-95, General Code, ‘asking for an order restraining the Superintendent of Banks from carrying into effect any order on application for authority to surrender trusts. # # * J J J
 

 In the case of
 
 Haggerty
 
 v.
 
 Squire, Supt. of Banks,
 
 137 Ohio St., 207, 28 N. E. (2d), 554, plaintiff filed a claim with the Superintendent of Banks in the liquidation proceeding in the Common Pleas Court. The claim was rejected and thereafter Haggerty brought an action against the Superintendent of Banks resulting in the setting aside of the trust and the allowance of a claim against the bank.
 

 Section 710-92, General Code, provides:
 

 “If the superintendent of banks doubts the justice or validity of any claim, he may reject the same in whole or in'part, or reject any claim of security preference or priority, or offset, and shall serve written notice of such rejection upon the claimant, either personally or by registered mail. A certificate of such rejection and certificate of notice filed in the office of the superintendent shall be
 
 prima facie
 
 evidence of such rejection and notice.
 

 “Any person, partnership, corporation, or association who shall deem himself or itself aggrieved by the rejection of his or its claim in whole or in part, or the' rejection of any claim of security preference or priority, or set-off, by the superintendent, shall bring an
 
 *375
 
 action against the superintendent of banks and such bank, within three months after such rejection or refusal of allowance, or be forever barred from asserting the same.”
 

 Section 710-95,’ General Code, provides in part:
 

 “In case of doubt or difficulty, the superintendent may ask the instructions of such court, or a judge thereof, as to the manner in which he should exercise Ms powers and discretion. He shall not be directed or restrained in the exercise of his powers or discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion.”
 

 IV. “The law does not specially enjoin any duty upon the Superintendent of Banks to do the things relators seek to compel him to do.”
 

 Relators have pointed to no statute prescribing a duty of the Superintendent of Banks which has been violated. They argue that it is the duty of the superintendent to subserve the public policy of the state of Ohio.
 

 In the case of
 
 National City Bank of Cleveland, Successor Trustee,
 
 v.
 
 Guardian Trust Co.,
 
 137 Ohio St., 279, 282, 28 N. E. (2d), 763, this court held:
 

 “The office of Superintendent of Banks is of statutory creation and the powers and duties of the incumbent thereof must likewise be statutory or they do not exist.”
 

 In the case of
 
 State, ex rel. Welsh,
 
 v.
 
 State Medical Board,
 
 145 Ohio St., 74, 60 N. E. (2d), 620, we held: “The writ of mandamus will not issue to command performance of ‘implied or cognate power.’ ”
 

 In the case of
 
 Cullen, Vice Mayor,
 
 v.
 
 State, ex rel. City of Toledo,
 
 105 Ohio St., 545, 138 N. E., 58, it was held:
 

 “A writ of mandamus will not issue to compel the
 
 *376
 
 observance of law generally, but will be confined to commanding the performance of specific acts specially enjoined by law to be performed.” See, also,
 
 State, ex rel. Caston,
 
 v.
 
 Brindle, Supt. of Public Works,
 
 128 Ohio St., 260, 191 N. E., 99;
 
 State, ex rel. Kunick,
 
 v.
 
 Urner, Aud.,
 
 135 Ohio St., 9, 18 N. E. (2d), 607;
 
 State, ex rel. White,
 
 v.
 
 City of Cleveland,
 
 132 Ohio St., 111, 5 N. E. (2d), 331;
 
 State, ex rel. City Loan & Savings Co. of Wapakoneta,
 
 v.
 
 Taggart, Peer.,
 
 133 Ohio St., 382,14 N. E. (2d), 10;
 
 State, ex rel. Foster,
 
 v.
 
 Miller et al., Tax Comm.,
 
 136 Ohio St., 295, 25 N. E. (2d), 686; which cases we approve and follow in respect of the foregoing principle.
 

 The duties of the Superintendent of Banks in the liquidation of a bank are similar to the duties of the Superintendent of Building and Loan Associations in liquidating such associations.
 

 In the case of
 
 State, ex rel. Merion, Supt. of Bldg. & Loan Assns.,
 
 v.
 
 Unemployment Compensation Bd. of Review el al.,
 
 142 Ohio St., 628, 53 N. E. (2d), 818, Judge Zimmerman said at page 630: “The superintendent, in liquidating the Columbian Building & Loan Company, was not acting in a sovereign or governmental capacity. Ilis status as liquidator was similar to that of an ordinary receiver or 'trustee, and his acts were for the benefit, and in the interests, of creditors, depositors and shareholders of the company and other affected persons, and not for the benefit of the state of Ohio in any direct sense.”
 

 In the case of
 
 State, ex rel. Fulton, Supt. of Banks,
 
 v.
 
 Bremer, Admx.,
 
 130 Ohio St., 227,198 N. E., 874, this court held:
 

 ‘ ‘ The state of Ohio, while a nominal party in an action brought by the Superintendent of Banks against the stockholders of a bank to enforce the super-added liability imposed by Section 3 of Article XTTT 0f the Constitution of Ohio, has no proprietary or pecuniary
 
 *377
 
 interest in the result of the action, and in such action is not suing in its sovereign capacity.”
 

 In the case of
 
 State, ex rel. Stoer,
 
 v.
 
 Raschig, Dir. of Dept. of Public Works,
 
 141 Ohio St., 477, 49 N. E. (2d), 56, we held:
 

 “In exercising the extraordinary power of mandamus a court should take into consideration the facts and conditions existing at the time it determines whether to issue a peremptory writ; if it should affirmatively appear that no wrong could possibly be remedied or no right could possibly be enforced or promoted, the writ will be refused.
 
 (State, ex rel. Apple,
 
 v.
 
 Pence,
 
 137 Ohio St., 569, approved and followed.)” See, also,
 
 State, ex rel. Ingerson, v. Berry, Jr., Clerk,
 
 14 Ohio St., 315;
 
 State, ex rel. Phelps,
 
 v.
 
 Gearheart, Supt.,
 
 104 Ohio St., 422, 135 N. E., 606;
 
 State, ex rel. Haines,
 
 v.
 
 Bd. of Education of Greene County School Dist.,
 
 131 Ohio St., 609, 3 N. E. (2d), 527, which we follow in respect of the foregoing principle.
 

 In the course of the
 
 per curiam
 
 opinion in the case of
 
 State, ex rel. Roth,
 
 v.
 
 West, Dir. of Finance,
 
 130 Ohio St., 119, 197 N. E., 115, it was said, in referring to mandamus, ‘ ‘ that it is a discretionary writ; that the consequences of its allowance, as well as the right to its allowance, will be considered by the court in the exercise of its sound discretion; the court is not moved to exercise its discretion unless relator moves with alacrity, establishes a clear right to the writ for which he prays, and is without legal or equitable remedy.”
 

 We find that:
 

 (1) The pleadings do not show any interest in the relators, public or private;
 

 (2) The pleadings do not show the violation of any duty specially enjoined upon respondent;
 

 (3) Relators did have a plain and adequate remedy in the ordinary course of the law;
 

 (4) The relators have heretofore availed themselves
 
 *378
 
 of a plain and adequate remedy in the ordinary course of law and therefore may not relitigate the same questions by means of a proceeding in mandamus.
 

 ¥e are of the opinion, therefore, that as the pleadings do not disclose a clear legal right in the relators to a peremptory mandamus, the motion for judgment on the pleadings filed by respondent should be and hereby is sustained. Relators’ motion for judgment on the pleadings is overruled.
 

 Judgment for respondent.
 

 Zimmerman, Hart, Ross and Matthews, JJ., concur.
 

 Bell and Matthias, JJ., concur in the syllabus but dissent from the judgment.
 

 Ross and Matthews, JJ., of the First Appellate District, sitting by designation in the place of "Weygandt, C. J., and Williams, J.