IN RE APPROPRIATION OF EASEMENT FOR HIGHWAY PURPOSES: PRESTON, DIR. OF HIGHWAYS, APPELLANT, *v.* WEILER ET AL., APPELLEES.*

---

*Judgment reversed, 175 Ohio St., 107.

306

Mr. Mark McElroy, attorney general, Mr. Harry R. Paulino, Mr. John F. O'Brien, Mr. William E. Fowler, Jr., Mr. William D. Henry, Mr. James D. Billett and Mr. Joseph D. Bryan, for appellant.
Messrs. Feibel, Feibel & Golden and Mr. Willis E. Wolfe, Jr., for appellees.

DUFFEY, P. J. This is an appeal by the state from a judgment of the Common Pleas Court in an appropriation proceeding. The property to be appropriated is stated in the resolution of the highway director as " 'an easement of property rights, being the impairment of ingress and egress, caused by the construction and improvement * * *.' " The value set and deposited by the director was $1. The judgment was for $59,576 plus interest at 6 per cent from June 5, 1959 (time of taking), to date of payment.

The state contends (1) that there was no "taking," (2) if there was a taking, the value is only nominal and the award is against the weight of the evidence, and (3) that the provision on interest is contrary to law.

Appellees contend (1) that the question of "taking" is res judicata, (2) that there is a taking, (3) that the verdict is well within the evidence of value, and (4) that the interest provision is proper.

The contention with respect to res judicata is based on a mandamus action by the property owner against the Director of Highways in the Common Pleas Court of Franklin County, Ohio. An appropriation proceeding is one in rem. The doctrine relied upon is, therefore, more accurately described as estoppel by judgment. State, ex rel. Ohio Water Service Co., v. Mahoning Valley Sanitary District (1959), 169 Ohio St., 31. It goes not to the power of the court, but as with estoppels generally, must be proved and may be waived. While the briefs contain copies of portions of the mandamus proceedings, those proceedings are not of record in this action. Neither this court

nor the Common Pleas Court, whether during trial or on a motion for new trial, can take judicial notice of the proceedings in another action. *Bachtel* v. *Bachtel* (1954), 97 Ohio App., 521, and cases cited therein. See also 21 Ohio Jurisprudence (2d), 74, Evidence, Section 61.

The present case presents a novel situation. The condemnor, who initiated the appropriation proceeding, is now claiming that there is nothing to appropriate. It is a disclaimer of liability rather than an argument on the extent of liability. Understandably, there is only sparse authority on such a peculiar situation. On the record before us, it would seem that logically the state should have dismissed the proceeding voluntarily. "Aliunde" the record, we know why the state preferred to insist that the court itself should order a dismissal.

Had this been a simple case in which the resolution was directed to tract A, and the evidence showed a taking only with respect to tract B, the problem would have been apparent. However, the taking here, if any, is only *pro tanto* and of an intangible, incorporeal interest. The existence of the taking, therefore, depends on the degree of interference. The file contains the notes of the trial judge indicating that he felt bound on the question of a taking by the decision of another branch of the court in the mandamus action. He was bound, of course, in the sense of *stare decisis*, and respect for a fellow member of the same bench. As previously noted, he was not bound by the doctrine of estoppel by judgment.

A somewhat comparable problem was recognized by the court in *Rockwell* v. *Ohio Turnpike Commission* (1954), 98 Ohio App., 199. The court commented at page 203:

"* * * this court has been impressed by the lack of any reasonably clear proof in the record of the nature and character of the specific easements sought to be appropriated for drainage purposes, although it is apparent to this court that evidence and full information were available to either party and that it was the responsibility of both parties, in proceedings in which private property is being appropriated to a public use, to present proof of a character such as would fully and fairly apprise the court and jury of the extent and nature

of the rights and property of the landowner which the commission was seeking to condemn and appropriate. 15 Ohio Jurisprudence, 888, Section 197; *Martin* v. *City of Columbus*, 101 Ohio St., 1, 127 N. E., 411.''

However, no other Ohio case has been cited to us. With respect to other states, we note that many follow the ''judicial appropriation'' procedure rather than the ''administrative'' system generally followed in Ohio. In states with comparable procedure, we know of no case similar to the present one.

The objection raised is not one which goes to the weight of the evidence. It goes rather to the basis of the proceeding and the sufficiency of the evidence to support a verdict. The appellees do, of course, own a property interest in the nature of an easement for ingress and egress. That interest is sufficiently described in the resolution. The jurisdiction of the court has been invoked with respect to the property described. However, the action is one in rem and the particular function of the jury is to determine the value of the property taken. For the jury to act, it is not sufficient that the property be merely identified. The fact and extent of the taking must also be shown. If there is no taking there is nothing to value. In the record there must be evidence establishing the taking or there is nothing upon which a verdict and award can be based. Although the state's contention is inconsistent with its conduct in initiating proceedings, yet, if the evidence is insufficient to support the judgment, it is entitled to raise the objection and is entitled to a dismissal.

Appellees' building is on the northwest corner of Third Street and Chestnut in Columbus. It has about a 93 foot frontage on Chestnut; 187 feet on Third; and to the rear (north) it fronts on a smaller street or alley called Locust. Third Street was a north-south, two-way street running from a T-intersection north of appellees' building. It had an 82½ foot right of way and 55 foot pavement. The state constructed a viaduct from Summit Street across railroad tracks and into Third Street. A solid, dirt-filled ramp from the viaduct comes into Third Street from the northeast and drops to grade at Chestnut. Third Street was widened for the viaduct and ramp by acquiring additional land on the east side. The west re-

taining wall of the ramp runs at an angle across a portion of the old pavement so that at Locust and Third the old pavement is now approximately 28 feet wide and narrows as it proceeds south to 12 feet at Chestnut and Third.

No part of appellees' building or land was acquired. In the testimony and briefs, there is frequent reference to the "narrowing" of Third Street. However, this refers to the amount of old pavement left untouched by the improvement. There was no narrowing of the right of way of the street nor of the total surface used for travel but rather a widening of both. Legally speaking, there was a widening on the *east* or opposite side together with a change of grade on the eastern *portion* of the pavement by the construction of the solid ramp leading to the viaduct itself. There was no change of grade on the other portion which abuts appellees' property.

The city of Columbus, which is not a party, has adopted traffic regulations which (1) made the viaduct portion one-way south, (2) made the old pavement portion also one-way south, (3) imposed more stringent parking, stopping and loading zone provisions on the west curb lane abutting appellees' property.

Appellees' building contains a freight elevator which fronts on Third Street. Prior to the improvement, the building was permitted a loading zone extending from north of the elevator to south of it, and, just prior to the improvement, this loading zone was 42 feet long. After the improvement the loading zone permitted by Columbus on Third Street is smaller and located generally north of the elevator.

In considering whether a "taking" occurred in a constitutional sense, it is helpful to break down the various factors involved in this improvement. There was (1) a widening of the total pavement and right of way on the opposite side from appellees; (2) a change in the direction of traffic flow; (3) a change of grade by the construction of a viaduct ramp in a portion of the street (more than half) but not abutting appellees' property; (4) a change in the loading zone permitted.

1. It is apparent that the widening is not legally a taking as to appellees.

2. It is equally apparent that the regulations which change the traffic flow are not a taking per se. *State, ex rel. Merritt,*

v. *Linzell, Dir.* (1955), 163 Ohio St., 97. Whether or not these regulations themselves might constitute a taking, we need not consider because (a) there is no evidence that they are unreasonable; (b) the question could not properly be raised in this proceeding; (c) they were imposed by the city of Columbus and not by the appellant, state of Ohio.

(All the expert testimony on value and therefore necessarily the verdict of the jury, took into account the effect Columbus traffic and loading restrictions had on loss in market value. Obviously, the effect of these police regulations upon value is causally related, if at all, only indirectly to the improvement. If a taking existed, the question would then arise whether that is a proper factor to consider in awarding compensation against the state. ·We express no opinion on the point.)

3. The partial change in grade is not, by itself, a taking as to appellees. The interference with light, air, and view is not a taking. *State, ex rel. Schiederer,* v. *Preston, Dir. of Highways* (1960), 170 Ohio St., 542. The original Third Street provided 4-lane travel. Had it been made one-way southbound, and a "divider" been placed between the western outside lane and the other three lanes, there would be no *unreasonable* interference. *State, ex rel. Merritt et al.,* v. *Linzell, supra* (163 Ohio St., 97); *New Way Family Laundry, Inc.,* v. *City of Toledo* (1960), 171 Ohio St., 242. There are still four lanes. The effect of the grade change here is exactly the same as the placement of such a divider—it prevents right turns into appellees' premises from the three furthermost lanes. We do not consider the fact that three rather than two lanes are affected to be significant. The basic effect is circuity of travel to reach the lane abutting appellees' property.

4. The *only* effect on appellees' property remaining is that the loading zone available on the west curb lane has been decreased in size. On the evidence, this decrease is the result or product of the interplay between (a) the location of a preexisting city fire plug north of the elevator, (b) the basic police regulations of the city on loading zones, and (c) the retaining wall of the viaduct ramp.

Appellees have pointed out that under Columbus regulations there must be a 10 foot clearance provided for passing

vehicles adjacent to any loading zone. Assuming an 8 foot width for a vehicle parked one foot from the curb, and 10 foot clearance, there thus must be a 19 foot width available. Applied here, the effect of that Columbus regulation is that the southern line of a loading zone designed to accommodate an 8 foot wide truck must be at about the north edge of the elevator entrance. Previously, the loading zone could, and did, extend further south toward Chestnut.

It is dubious that Ohio law recognizes a *property easement* in an abutting owner to load or unload vehicles within the right of way. See *State, ex rel. Schiederer,* v. *Preston, Dir., supra* (170 Ohio St., 542), paragraph one of the syllabus. This should be distinguished from such loading and unloading by highway users in general and from the question of the reasonableness of police regulations which restrict such a highway use. There is also the question, previously noted, of the effect of such regulations in determining consequential damages where a taking exists.

Assuming that a loading zone can be considered as part of the abutting owner's private right, the *mere* fact of an interference with access is not a taking *pro tanto* which would entitle the owner to even nominal damages. To be a taking *pro tanto* of the access easement, such as to entitle the owner to compensation, there must be an injury different in kind rather than degree from that of the public. Perhaps more meaningfully stated, there must be a "substantial," or "material," or "unreasonable" interference with the physical access to or from the property. See *Jackson* v. *Jackson* (1865), 16 Ohio St., 163, at 169; *Pritz* v. *Messer* (1925), 112 Ohio St., 628, paragraph one of the syllabus; *State, ex rel. Merritt,* v. *Linzell, Dir., supra* (163 Ohio St., 97), paragraph one of the syllabus. See also *State, ex rel. Schiederer,* v. *Preston, Dir., supra* (170 Ohio St., 542), at 545. In that respect, we do not think *Cohen* v. *Cleveland* (1876), 43 Ohio St., 190, is pertinent here. The basis of the decision appears to be the noise and jarring to the property. See *State, ex rel. Schiederer,* v. *Preston, Dir., supra* (170 Ohio St., 542), at 547.

In determining if there is a substantial, material, or unreasonable interference with access, it is not proper to seize

upon one facet of the total right, and measure the intereference upon that facet only. The proper test is whether such an interference exists as to the right considering all of its particulars.

The most fundamental aspect of the right of ingress and egress is the ability to get physically onto and out of the property itself. The partial grade change here has not affected that access as it previously existed. The grade adjacent to the building remains the same, and the traffic lane width is more than sufficient for vehicles to approach the building. Of course, this particular building has never been provided with facilities for access into and out of the property itself from Third Street —either in the form of loading docks within the property lines or an access drive to a loading area or both. In choosing to build on the property line without provision for the loading or storage of vehicles and materials, there was a deliberate decision to use the public right of way for loading and storage operations. Obviously, there was no right to rely upon the degree or intensity of public travel as it might have previously existed. While the building design here may make such a use of the public way important to this building, the public did not make that choice, and the public has not interfered with the *ability* to have access onto and out of the property itself.

The sidewalk area has not been affected. The vehicle travel area adjacent to the building ranges from slightly more than a normal traffic lane at Chestnut to more than twice a normal lane (28 feet) at Locust. There is some loading space on the west curb. (If the city were to move the northern fire plug, additional space could be provided.) Space is also capable of being provided at the east curb of the old pavement, *i. e.*, against the retaining wall. In effect, the appellees' property has been provided with what we consider to be a very adequate service road.

We hold that as a matter of law the record does not show a "taking," and therefore there was no basis for a verdict on the value of property taken, nor for a judgment awarding compensation.

In view of this conclusion, we find it unnecessary to consider whether the verdict is against the weight of the evidence or whether the interest provision is proper.

The judgment of the Common Pleas Court is reversed, and a judgment of dismissal will be entered by this court.

*Judgment reversed.*

BRYANT, J., concurs.

DUFFY, J., dissenting. I dissent from the majority opinion for the reason that I believe it is clear that the viaduct which was built in the street adjoining the appellees' property did cause a change in the grade and the retaining wall of the ramp, and is an obstruction which materially impairs its use as a means of access, and is a taking of property for which recovery may be had.

Considering that the building had been built to the property line and the value of the multiple tenant building was dependent upon the use of the elevator, and the location of the ramp made it impossible for the continued use of the loading zone at the elevator entrance, there was a definite interference with the established method of ingress and egress. The fact that the appellees were able to build another elevator in the rear of the building, which permits the continued use of the building, should affect not the recovery but merely the amount of damages.

The state makes an argument that the loss of the loading zone was because of a municipal ordinance and did not constitute a taking on their part, but there was evidence in the file from which the jury could find that the changes in the ordinance were caused by the building of the ramp onto Third Street and limiting the roadway adjoining appellees' property to as little as 12 feet of road space. See *State, ex rel. McKay, Exr.,* v. *Kauer, Dir.,* 156 Ohio St., 347; *State, ex rel. Merritt,* v. *Linzell, Dir.,* 163 Ohio St., 97, at bottom of page 101; and *Ghaster* v. *City of Fostoria,* 115 Ohio St., 210.

(Decided March 13, 1962.)

ON MOTION for reconsideration.

DUFFEY, P. J. Appellees filed a motion for reconsideration of the decision of January 2, 1962.

The first contention is that the only issue before this court

is the value of the property and that this court is not entitled to consider whether a "taking" was shown on the face of the record.

The only issue for the *jury* to determine in an appropriation proceedings is the amount of the award. However, there are several other matters involved in the proceedings. In our opinion, the foundation of the in rem proceedings in an appropriation action is (1) the existence of a property interest, (2) a "taking" and (3) the proper procedural steps to invoke the court's jurisdiction. If any of these are absent, there is no basis upon which the jury can perform its function. While the first two are seldom questioned in practice, that fact does not make them any less essential. It might be noted that the opinion of the dissenting judge finds that there was a material interference with access and therefore a taking.

In their second contention appellees rely upon the judgment in an alleged previous mandamus action as being conclusive and therefore establishing a taking. Copies of portions of the record in a mandamus action are attached to the motion for reconsideration. Appellees contend that this court has erroneously held that appellees had "waived" their right to rely upon *res judicata* or estoppel by judgment.

Appellees should be aware that in a law appeal they cannot add to the record before the Court of Appeals. Neither can the record be remanded to a trial court for the purpose of adding that which was not before the trial court. Unfortunately for these appellees the law is also clear that judicial notice may not be taken of the proceedings in another suit. Appellees' problem is not one of "waiver" of their rights by any conduct in the trial court proceedings. It is simply that there is nothing properly of record with respect to the alleged previous suit which this court can consider. As individuals, we appreciate the circumstances and human reasons why these matters are not of record. As judges, we appreciate the need for confining judicial action to that which is of record.

In the third contention appellees state that the court must confine itself to matters of error properly preserved in the record and that this court ventured far beyond the bounds of the record. Appellees do not appear to contend that this court considered evidence or any other matter which is not of record.

The contention appears to be that appellees believe this court decided *issues* which they do not consider to have been properly raised. The state did raise the issue explicitly in this court. They also raised it explicitly in the motion for a new trial. Under the circumstances of this case we believe this sufficient. It might be noted, however, that both in the resolution and in the trial the state claimed that because of the nature of the taking appellees were entitled to recover at most a nominal award.

The motion to reconsider is overruled.

*Motion overruled.*

BRYANT, J., concurs.