The State, ex rel. Barman, *v.* Lukens, City Manager, et al.
The State, ex rel. Frey, *v.* Lukens, City Manager, et al.
The State, ex rel. Quinn et al., *v.* Lukens, City Manager, et al.
The State, ex rel. Bowman Drugs, Inc., *v.* Lukens, City Manager, et al.

2

(Nos. 31124, 31130, 31143 and 31187—Decided June 4, 1964.)

*Mr. William C. Boulger, Mr. Thomas A. Boulger, Mr. John S. Street, Jr., Mr. John E. Wissler, Mr. David Barrett* and *Mr. Richard Maier,* for relators.

*Mr. William W. Stanhope* and *Mr. John W. Blair,* for respondents.

Ammer, J. (of Pickaway County, sitting by assignment). These four cases were filed seeking writs of mandamus to require the respondents to include the names of the relators in the application to assess compensation in connection with the elimination of a grade crossing on East Main Street in Chillicothe, Ohio, by construction of an overpass. Three cases were combined for the purpose of trial and the fourth was tried separately. However, for the purpose of this opinion, as the issues are the same in all four cases, the opinion will relate to all four actions. The respondents have filed in each of these cases a motion for separate findings of fact and conclusions of law.

All the properties are on the south side of East Main Street; are owned by the relators; and have been previously improved according to the established grade of East Main Street before the construction of the overpass. The area in question was business and residential.

In the year 1960 East Main Street in front of relators' properties was a paved public highway with a right-of-way of 99 feet with an 18-foot concrete sidewalk on the south side. It was paved to a width of approximately 60 feet and accommodated two lanes of vehicular traffic in both the east and west directions plus a parking lane on both the north and south sides. Prior to the improvement, traffic flowed unobstructed westerly to downtown Chillicothe and easterly to the east side of the city. The relators had full access to the properties and business on the north side of the street and the buildings in question were used primarily in connection with the various businesses located therein.

In the spring of 1960 the city of Chillicothe began construction upon a project for the improvement of East Main Street between Ewing Street and McArthur Street by the elimination of a railroad grade crossing through construction of a viaduct or railroad overpass.

The center line of East Main Street was moved approximately 10 feet to the north in front of the relators' properties and the center line was run upon and as the center line of a viaduct beginning some distance west of the relators' properties and continuing easterly on a six per cent ascending grade past the relators' properties and over the railroad. The highway portion of this viaduct is approximately 57 feet wide and ap-

proximately 12 feet above the previous grade of East Main Street in front of relators' properties. There is no access at grade whatsoever from relators' properties to the viaduct.

The viaduct rests upon 10 piers of four columns each which rise from the previously traveled part of East Main Street and are spread about the entire area under the viaduct. Vehicles are permitted to park among these columns under the viaduct. There is no access to relators' properties from East Main Street as it passes over the viaduct and the city has substituted an 18-foot service road which is one way from west to east. Relators cannot enter upon the viaduct from their properties and can travel east only from the properties upon the service road for a distance of about one block to Sugar Street from which point relators cannot proceed further easterly across the railroad tracks or enter directly on East Main Street. Mosher Alley runs northerly from what was previously the north side of East Main Street. Certain of the relators cannot enter upon the viaduct from this alley, but it can be used by some of the relators for that purpose. The relators' properties, according to the improvement of the viaduct, is 22.9 feet higher than the old grade of East Main Street and the south edge of the viaduct is approximately 27½ feet from the relators' properties and businesses. The sidewalk has been narrowed in front of all the relators' properties at varying amounts so as to accommodate the one way traffic on the service driveway. The service driveway is of varying widths, between 17 and 19 feet and approximately 11 and 12 feet at the turn on to the driveway of South Sugar Street. The service driveway is at the old grade level and does not enter the overpass. At the corner of the driveway and South Sugar Street a crashwall and guardrails have been installed and North Sugar Street has been closed.

On October 7, 1959, Resolution No. 66-59 C. S. was adopted by city council, proposing to make the improvement on East Main Street by construction of the overpass with the necessary driveways, abutments, embankments, side driveways and service driveways. The resolution directed the clerk of council to serve a copy of it upon the owners of record of "all abutting and adjoining properties to this improvement" so as to notify such owners of the adoption of the resolution.

On October 27, 1959, the relators were notified in writing

of the passage of that resolution, which specified that any claim for damage resulting from the improvement should be filed within two weeks from the service of such notice or they would be deemed to have been waived. Within the time required relators filed their claims pursuant to the resolution and notice.

On April 6, 1960, Ordinance No. 159-60 C. S. was enacted by city council directing the director of law of the city to submit all claims filed pursuant to the previous resolution to judicial inquiry after completion of the improvement.

On October 5, 1961, the relators received letters from William W. Stanhope, director of law of the city, advising them that the improvement provided for by the initial resolution had been completed and that the claims of the relators had been disallowed by the law director and the city.

On October 10, 1961, the city of Chillicothe filed in the Court of Common Pleas in case No. 31107 an application to assess compensation due certain defendant property owners abutting the improvement and the application did not name the relators herein or their properties, despite the fact that all the relators had filed claims pursuant to the initial resolution.

On November 1, 1961, resolution No. 242-61 C. S. was adopted by city council authorizing the director of law to disallow any claims for damages filed under the initial resolution on behalf of the property owners whose property did not abut directly upon the overpass.

In view of the respondents' refusal to include the names of the relators in the application to assess compensation, these actions for writs of mandamus have been filed.

The evidence clearly shows that the improvement herein was not financed by any assessments upon the adjoining or abutting property owners but was paid for from public funds available from the federal, state and city treasury.

At the trial of this matter various exhibits were introduced into evidence to support the matters of the passage of the various ordinances and the claims filed on behalf of the property owners.

Charles S. Alexander, a real estate broker, testified as an appraiser for one of the relators relative to the various changes that were made as to the street and the property in question and he stated that, in his opinion, the improvement, due to the

change and elimination of access, had damaged the property fifty per cent. He stated that the fact the Main Street traffic had been taken away from the properties with the construction of the overpass affected the patronage at places of business.

Theaton Cook, city engineer, testified relative to the completion of the improvement and the level of the street before and after the improvement and gave various measurements relating thereto which the court has reviewed in the research of the cases prior to the writing of this opinion. It appears that parking is permitted on the service road, with the rest of the width for one way traffic. It appears further that parking meters were in existence in the area of the properties before and after the improvement. He testified that only five of the fifty-five properties involved directly abutted the viaduct.

Charles C. Evans, a real estate broker, also testified as an appraiser relative to the matter of the elimination of access due to the improvement, and he was of the opinion that this factor materially affected the value of the properties in question. All the evidence is clear that there is no physical taking of any of the properties of the relators herein.

William F. Kern, a real estate broker, testified relative to the matter of the elimination of access and stated in his opinion the value of the properties had been reduced approximately sixty to seventy per cent due to lack of access. He testified that at the easterly end of the service road trucks would have extreme difficulty in making the turn at a width of approximately 11 feet.

Vernon J. Stacey, director of finance for the city, testified that no assessments were had for the improvement.

James P. Rice testified as to the various physical features of the improvement.

Harold Chapman, a real estate broker, testified as an appraiser for the city and stated that there was no damage to the properties in question due to the improvement, as the access was the same as it had been previously and that East Main Street is still the same as it was previously except for the construction of the viaduct. He was of the opinion that time has affected the value of the properties rather than the matter of access due to the improvement.

Karl K. Fry, Jr., son of one of the relators, testified as to

proceeding west on the overpass as to certain metal dividers on the street separating the east and west traffic.

J. K. Ruddell, clerk of council, testified relative to the matter of the handling of claims and notices in connection with the resolution for the improvement.

James D. Hottinger, a newspaper photographer, identified certain photographs which were admitted into evidence.

In connection with the case involving Bowman Drugs, Inc., H. D. Hamburger, regional manager, stated that he worked at the Chillicothe store from 1952 to 1957 and that the store was closed in June of 1960. He stated the store was located in a commercial-residential area and handled physicians and hospital supplies and sold items at retail for sickroom purposes. He stated that the store did receive warehouse merchandise through the alley entrance in the rear as well as to the front entrance and that at the present time the overpass is directly in front of the building, approximately 12 feet in area, and there is no direct access from the building to the viaduct. He stated that the service driveway cannot be used for the purpose of receiving merchandise due to the narrow exit of the road at South Sugar Street.

Ordinance No. 309-58 which was introduced into evidence makes it the city's duty to acquire the right-of-way for the improvement. Section 3 of that ordinance states that the city agrees to acquire and pay initially for the property and property rights required for the project or any part thereof.

Issues and Law.

1. Are the relators abutting property owners as it relates to the viaduct improvement?

In the case of *City of Cincinnati* v. *Batsche,* 52 Ohio St. 324, the fourth paragraph of the syllabus reads as follows:

"Where a strip of ground from one side of a street is appropriated for the purpose of widening such street, the lots and lands fronting on the opposite side of the street at the part widened, will be held to abut on the improvement, although the street may intervene between the abutting lots and lands and the strip of ground appropriated."

In the case of *State, ex rel. McKay,* v. *Kauer,* 156 Ohio St. 347, the court stated that a change of grade which eliminated access by the taking of property:

"In some jurisdictions it is held that interference with access to the premises of an abutting owner by a public improvement in the street or highway does not, so long as no part of the physical property area is involved, constitute a "taking" or appropriation of the property for a public use requiring compensation to the owner therefor. *Transportation Co. v. City of Chicago,* 99 U. S. 635, 25 L. Ed. 336. This rule seems to be a relic of the ancient doctrine that the king can do no wrong, but it has never obtained in Ohio.

"Since an early day, it has been the law of this state that an owner of real property has an easement in the public street on which his property abuts, as an appurtenance thereto; and that if a substantial change of grade in the street upon which the property abuts renders the buildings thereon less convenient of access there is an appropriation *pro tanto* of the property right in the easement, for which compensation may be required."

The second paragraph of the syllabus of the same case reads as follows:

"Where the grade of a street constituting a part of a state highway has been established and the owner of the property abutting thereon has improved his property in reliance upon and in conformity to such grade, and thereafter a highway improvement is made upon such street by the Director of Highways of the state in accordance with legally approved plans and specifications whereby the width of the street or highway is narrowed and the grade of the remainder is substantially lowered from the former grade to such extent that there is no physical access to or from the property to the street, the owner of such property suffers a "taking" of his property and is entitled to compensation by way of damages from the state to the extent of his loss, even though no part of the physical property is taken or disturbed."

The court also stated:

"The respondent claims * * * that although relator had access from Market street to Spring Common before the improvement, he still has access to Market street although it became a cul-de-sac; and that since he still has access to these streets he has suffered no legal damage from the change of grade on Spring

Common. In this respect, the respondent relies on the cases of *New York, Chicago & St. Louis Rd. Co.* v. *Bucsi,* 128 Ohio St. 134, 190 N. E. 562, 93 A. L. R. 632, and *City of Bellevue ex rel. Vickery, City Solicitor,* v. *Stedman,* 138 Ohio St. 281, 34 N. E. 2d 769.

"It is to be noted, however, that in those cases the properties did not abut on the streets at points where the improvements were made but were some distance away from the improvements which closed the streets upon which the properties abutted, thereby creating cul-de-sacs, but did not otherwise interfere with reasonable access to the streets upon which the properties abutted and to other streets unaffected by the improvements. Those cases are clearly distinguishable from the instant case and other cases of like character in that respect."

In the case of *State, ex rel. Merritt,* v. *Linzell,* 163 Ohio St. 97, the first paragraph of the syllabus reads as follows:

"An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor."

It is noted in the case of *State, ex rel. McKay,* v. *Kauer, supra* (156 Ohio St. 347), that the court distinguished between a change of grade as to the part of the street in front of relators' property which abutted the street and a change of grade or vacation of a street some distance from the abutting owners' property. In the latter situation no part of the improvement was in front of the property of the relators and access to the other streets were not affected by the improvement.

In the case of *Village of Port Clinton* v. *Fall,* 99 Ohio St. 153, the second pragraph of the syllabus reads as follows:

"Where the vacation of a street, the appropriation of land for a street adjacent thereto (and between the theretofore abutting lands and the vacated street) and the appropriation of such vacated street for the construction of a railroad elevated above the grade of the street, are contemporaneous and simultaneous transactions, said lands abut upon the vacated street for the

purpose of fixing compensation and damages for the appropriation of the incorporeal hereditament of the abutting landholder therein."

In that case the city contended that the property owner no longer abutted Second Street because a 50-foot strip along Second Street had been appropriated from the property owner prior to the vacation and erection of piers in Second Street. A new street was to be erected in the 50-foot strip. The question was whether damages should be awarded, prior to completion of the railroad overpass, to the property owner as an abutting property owner by reason of the railroad improvement in Second Street. The court held that the property abutted the improvement although the property did not physically touch the overpass and a street would run between the property and the overpass.

The respondents herein contend that the properties in question do not directly abut the overpass on East Main Street. It is noted that in Resolution No. 66-59 C. S. the wording used therein is "abutting and adjoining property to this improvement" and that notices pursuant to said resolution were served upon relators here in question. It is true that the relators' properties do not physically abut the overpass but that the same does affect the property right, particularly those relating to access, considering the elevation of East Main Street by the construction of the viaduct.

It will therefore be the finding of the court that the relators' properties do abut the improvement in question as it may affect the relators' property rights.

2. Is the procedure relative to the determination of the relators' property rights, if any, to be under the provisions of Secs. 5531.03, 4957.20, 4957.21 and 727.09 *et seq.* of the Revised Code or under the special provisions set forth by Ordinance No. 242-61 C. S.?

Sec. 1.03 of the Chillicothe Charter as is pertinent herein reads as follows:

"Manner of Exercising Powers. All powers of the corporation shall be vested in an elective Council which shall enact local ordinances and resolutions, adopt budgets, determine general policies and appoint a City Manager, who shall see that the policies and legislation adopted by the Council are enforced.

All powers of the corporation shall be exercised in the manner prescribed by this Charter, or if the manner be not prescribed, then in such manner as may be prescribed by ordinance or by general law.''

Sec. 5531.03 of the Revised Code reads in part as follows:

''* * * The procedure governing such improvements shall be in accordance with sections 5523.01 and 5523.19 and related sections of the Revised Code, as applicable to railroad crossings on the state highway system, except as provided in this section. * * *

''Legislative authorities of any political subdivision may, when approved by the director and when co-operating with the department of highways, follow the procedure available to the director in grade elimination projects as provided in Chapters 5501, 5503, 5505, 5511, 5513, 5515, 5517, 5519, 5521, 5523, 5525, 5527, 5529, 5531 and 5533 of the Revised Code as further modified by this section, but no contracts shall be awarded for the construction of such an improvement until the director has satisfied himself that all needed property is available. For the purpose of expediting such improvements as are undertaken under this section, work may begin on such improvement immediately after the completion of the publication of notice of the intention to proceed with the improvement required in section 5523.11 of the Revised Code, except that the notice need not name any owners not of record or whose place of residence is unknown and cannot, by the exercise of reasonable diligence, be ascertained, or who are nonresidents of the state. Service of notice upon the owners of all property to be taken, and on owners of land abutting on any portion of the highway to be physically changed, or which will be vacated in the construction of the improvement, shall be completed in accordance with section 5523.11 of the Revised Code within one hundred twenty days after the publication of such notice. Any owners whose place of residence is unknown and cannot, by the exercise of reasonable diligence, be ascertained, or who are nonresidents of the state shall, by a further publication be notified of a time for the presentation of their claims which shall be not less than twenty days after the completion of publication. Such further publication shall be in a newspaper and for such time as is provided in section 5523.11 of the Revised Code. The requirements of the

holding of an open meeting to explain the plans, as provided in section 5523.11 of the Revised Code shall be optional with the director in connection with any such improvement.

"The board or legislative authority of any municipal corporation may co-operate with the director in any of the improvements described in this section, adopting the appropriate procedure set forth in sections 5521.02, 5521.07, and 5523.15 and related sections of the Revised Code. The portion of the cost to be borne by the board or legislative authority of a municipal corporation may be paid from any available county or municipal funds."

Section 5523.11, Revised Code, sets forth the procedure as to plans for the proposed improvement and Section 5523.12, Revised Code, reads in part as follows:

"Within thirty days after the expiration of the time provided for the filing of claims for compensation or damages, when such claims have been filed as provided in section 5523.11 of the Revised Code, the director of highways shall determine by a finding entered upon the journal of the department of highways that such claims, or any of them, upon which the director and claimants therefor are unable to agree are to be judicially inquired into, and such entry shall contain a description of all property appropriated and the names of the owners thereof. * * *"

Chapter 4957, Revised Code, deals with the elimination of crossings and Section 4957.21, Revised Code, reads as follows:

"The laws relating to the manner of service of such notices, the filing of claims for damages, and the effect of failure to file such claims, shall apply to the notice provided in section 4957.20 of the Revised Code and to all claims for damages by reason of the proposed improvement. After the expiration of the time for the filing of such claims, the legislative authority of the municipal corporation, when claims have been filed within the time limited, shall determine by ordinance or resolution whether such claims are to be judicially inquired into before commencing or after the completion of the proposed improvement. Thereupon, the mayor or solicitor of the municipal corporation shall make application for a jury in the manner provided by law to the court of common pleas or probate court of the county in which the municipal corporation, or the larger part of it, is

situated, either before commencing or after the completion of the improvement as the legislative authority determines. All proceedings upon such application shall be governed by the laws relating to the application provided for in other cases of city improvements.''

It is to be noted that this section is for the elimination of crossings and sets forth a different procedure to be followed than that provided for in Chapters 5531 and 5523, Revised Code. Section 4957.23, Revised Code, reads in part as follows:

''The land or property required to make alteration in the street, road, alley, or other way, or any right, title, or interest in a public street, alley, or other way, required for the erection of piers or supports in any municipal corporation, necessitated by a proposed improvement, shall be purchased or appropriated by the municipal corporation or railroad company in the manner provided for the appropriation of private property for public use. * * *''

In conjunction with Chapter 4957, Revised Code, reference is made to Chapter 727, Revised Code, the pertinent sections reading as follows:

''Section 727.09. When it is deemed necessary by a municipal corporation to make a public improvement to be paid for in whole or in part by special assessments, the legislative authority thereof shall declare the necessity for such improvement by resolution, three fourths of the members elected thereto concurring. No such improvement shall be made without the concurrence of three fourths of the members elected to the legislative authority, unless the owners of a majority of the foot frontage to be assessed petition in writing therefor, in which event the legislative authority, a majority of the members elected thereto concurring, may proceed with such improvement. Such resolution shall be published as other resolutions, but shall take effect upon its first publication.

''Section 727.14. Notice of the passage of a resolution of necessity under section 727.09 of the Revised Code shall be served by the clerk of the legislative authority of a municipal corporation, or an assistant, upon the owner of each piece of property to be assessed, in the manner provided for the service of summons in civil actions. If any such owners or persons are not residents of the county, or if it appears by the return that

such owner cannot be found, the notice shall be published at least twice in a newspaper of general circulation within the municipal corporation. Whether such notice is given by service or publication, it shall be completed at least twenty days before the improvement is made or the assessment levied, and the return of the officer or person serving the notice, or a certified copy of such return, shall be prima-facie evidence of the service of the notice as required by this section.

"Section 727.18. An owner of a lot or of land, bounding or abutting upon a proposed public improvement, claiming that he will sustain damages by reason of the improvement, shall, within two weeks after the service of the notice required by section 727.14 of the Revised Code or the completion of the publication thereof, file a claim in writing with the clerk of the legislative authority, setting forth the amount of the damages claimed and a general description of the property with respect to which it is claimed such injury will accrue. An owner who fails to file such claim, shall be deemed to have waived damages and shall be barred from filing a claim or receiving damages. This section applies to all damages which will obviously result from the improvement, but shall not deprive the owner of his right to recover damages arising, without his fault, from the acts of the municipal corporation or its agents. If, subsequent to the filing of such claims, the owner sells the property, or any part thereof, the assignee has the same right to damages which the owner would have had without the transfer.

"Section 727.19. The legislative authority of a municipal corporation, at the expiration of the time limited for filing claims for damages under section 727.18 of the Revised Code, shall determine whether or not it will proceed with the proposed public improvement, and whether the claims for damages so filed shall be judicially inquired into, as provided by sections 727.22 to 727.24 inclusive, of the Revised Code, before commencing or after the completion of the proposed improvements.

"Section 727.24. When the legislative authority of a municipal corporation determines to assess the damages after the completion of an improvement for which a claim for damages has been filed as provided by section 727.18 of the Revised Code, the mayor or solicitor shall, within ten days after the completion of such improvement, make written application to the court

of common pleas, or a judge thereof in vacation, or to the probate court of the county in which the municipal corporation or the larger part thereof is situated, to summon a jury in the manner provided in section 719.08 of the Revised Code, to assess the amount of damage in each particular case. Such court shall fix the time and place of inquiry and the assessment of damages."

Chapter 719 deals with the matter of appropriation of property and Section 719.08 reads as follows:

"If it appears that the notice required by section 719.07 of the Revised Code has been served five days before the time of application, or has been published, or that such notice has been waived, the court to which such application was made shall set a time for the assessment of compensation by a jury. The assessment may be made at a special term of court, and the jury shall be drawn and the trial proceed as in other civil actions."

It is to be noted that Sections 5523.12 and 727.24, Revised Code, both provide for judicial inquiry in cases of highway improvements so, in effect, whether the procedure is had under the one section or the other, statutory authority provides for judicial inquiry of claims.

In the case of *Burton* v. *Powers,* 124 Ohio St. 564, at page 571 the court stated the following:

"Under the statute, Section 3829, General Code, and the Charter of the City of Cleveland, Section 119, and the ordinance, the director of law is under a positive obligation of making application for a jury for the purpose of determining the damages within ten days after the improvement has been completed. He has no discretion in the matter, and the duty is specially enjoined upon him by law."

The evidence would indicate that the city did proceed in acquiring the necessary property herein under Chapters 4957 and 727, Revised Code. Resolution No. 66-59 C. S. provided that the clerk was to serve a copy of the resolution on the owners of all abutting or adjoining properties to the improvement and return the same according to law and Section 7 of the resolution required all claims resulting from the improvement to be filed within two weeks from the receipt of notice or they shall be deemed to have been waived. Ordinance No. 159-60 C. S. provided that all claims for damages resulting therefrom should be judicially inquired into after completion of the proposed

improvement and that the director of law would institute proceedings in a court of competent jurisdiction to inquire into such claims. The city contends that it proceeded under Chapter 5531, Revised Code, which also refers to Chapter 5523, Revised Code. In its brief the city at this time contends it followed entirely the entire procedure of the ordinance and did not use the procedure of the Revised Code as to acquisition of property.

Article I, Section 19 of the Ohio Constitution reads as follows:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

It is to be noted that this section of the Constitution provides that when property is taken for public use compensation shall be made to the owner, which compensation shall be assessed by a jury.

The court is of the opinion that the city cannot avoid the constitutional provisions of assessment of damages and compensation by a jury by giving the director of law the authority to disallow claims.

It appears and the court will so find that the city herein did proceed under Chapters 4957 and 727, Revised Code, and that under the provisions as required under Section 5523.12, Revised Code, a judicial inquiry in accordance with the constitutional mandate is required and that ordinance No. 242-61 C. S. authorizing the director of law to disallow such claims is unconstitutional.

It will therefore be the finding of the court that pursuant to the statutory procedure required and followed by the city herein under Chapters 4957 and 727, Revised Code, the claims of the relators must be submitted to judicial inquiry.

3. Are the relators' property rights affected to justify an

award of compensation for damages, to wit: has there been a taking of private property within the provisions of Section 19, Article I, Ohio Constitution, requiring compensation for such taking to be assessed by a jury?

The evidence is clear that the changes on East Main Street adjacent to relators' buildings have resulted in a marked decrease in value of such buildings. Expert testimony on behalf of the relators was to the effect that this was due to elimination of access resulting from construction of the viaduct. The respondents contend that such changes do not differ from that of the general public and that the relators' legal status falls within the category of *damnum absque injuria*. *New York, Chic. & St. L. Rd. Co.* v. *Bucsi*, 128 Ohio St. 134.

Many cases have been cited and listed in the briefs submitted by the parties but the court will refer in this opinion only to the latest pronouncement by the Supreme Court of Ohio. In the case of *State, ex rel. McKay,* v. *Kauer, Dir.*, 156 Ohio St. 347, the first paragraph of the syllabus reads as follows:

"A property owner's right of access to his property from a street or highway upon which it abuts cannot be lawfully destroyed or unreasonably affected by the provisions of a municipal parking ordinance."

It is noted that in the *McKay case, supra*, Judge Hart reviewed the Ohio law and the law of other jurisdictions as to this question.

In the case of *State, ex rel. Merritt,* v. *Linzell, Dir.*, 163 Ohio St. 97, *supra*, the second and third paragraphs of the syllabus read as follows:

"1. An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor.

"2. Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, and, where a portion of a highway is relocated and property abutting on the old highway does not abut on the re-

located portion and the owner has the same means of ingress and egress to and from such property, there is no legal impairment of such right.

"3. The owner of land abutting on a highway has no property right in the continuation or maintenance of the flow of traffic past his property, and the diversion of traffic as the result of an improvement in the highway or the construction of an alternate highway is not an impairment of a property right of such owner for which damages may be awarded."

In a mandamus case entitled *State, ex rel. Schiederer,* v. *Preston, Dir.,* 170 Ohio St. 542, the syllabus reads as follows:

"1. The two primary purposes for the existence of a street or highway are (1) to provide a means of passage for the public and (2) to provide a means of access to and egress from abutting lands; and any other rights which owners of such abutting lands may have with respect to benefits resulting from existence of a street or highway are held subject to the public right to make improvements for accomplishment of those two primary purposes. (*Village of Port Clinton* v. *Fall,* 99 Ohio St. 153 and *Cohen* v. *Cleveland,* 43 Ohio St. 190, explained and distinguished.)

"2. There is no taking of property merely because the raising of the grade of a part of a street in front of land on that street, in making an improvement for street or highway purposes only, substantially interferes with the view that the owner of that land had over that street and with the relative harmony of the street with his land."

In a case decided by the Court of Appeals of this district, from Scioto County, entitled *In re Appropriation of Easement for Highway Purposes: Noble, Dir.,* v. *Webb,* 110 Ohio App. 88, the sixth paragraph of the syllabus reads as follows:

"In such case the refusal to charge the jury that the Director of Highways may restrict the abutting owner's right of access so long as reasonable and, if the owner has reasonable and convenient access to the highway after the improvement, no award can be made for restricting such access, is not error, where the restriction is not of the flow of traffic past such property but the frontage of the property after the improvement; and, in determining the damages to the residue, the jury may

consider such restriction in regard to the frontage of the property after the improvement."

It is noted in the opinion in the *McKay case* that the court does not make reference to changes in grade necessarily prohibiting all physical access but instead states if a substantial change of grade renders the building thereon "less convenient of access" there is an appropriation pro tanto. The substance of the language of Judge Hart in the *McKay case* was incorporated in a syllabus in the *Merritt case* by the Supreme Court, thus declaring it to be the law of Ohio, except that in the *Merritt case* the wording was changed to "substantially impaired" from the phraseology of the *McKay case* of "less convenient of access."

Consideration must be given as to what is meant by "private right or easement for the purpose of ingress and egress to and from his property." Does this mean simply the right of ingress and egress in the strictest sense of the physical arrangement by which individual persons may enter and leave or does it embrace the practicalities of commercial life and the necessity of conveying commercial merchandise into and out of the building? It is obvious that the Supreme Court intended that the latter interpretation applies, especially in view of the discussions of Judge Hart in the *McKay case, supra* (156 Ohio St. 347), at pages 354 and 355, relative to the claim of the city that the relators in that case did not suffer damages by the change of grade, since access to the street had already been foreclosed to him through the enforcement of a city ordinance prohibiting the parking of vehicles on either side of the street upon which the property abutted. Judge Hart, in the first paragraph of the syllabus of that case stated that "A property owner's right of access to his property from a street or highway upon which it abuts cannot be lawfully destroyed or unreasonably affected by the provisions of a municipal parking ordinance."

The contention that the relators' damages differed in degree but not in kind from that of the general public was discussed by Judge Hart in the *McKay case*, at page 354, in which he pointed out that the cases so holding were where the improvement was made some distance from the property in question,

The *Merritt case, supra,* is an example where an existing state highway was relocated so that the property of the relators therein no longer abutted on the new highway but continued to abut on the original highway as a county highway and the owners of such property continued to have the same access thereto in addition to the relocated portion of the highway at both ends thereof.

The court is of the opinion that at this time no determination need be made whether the relators' damages, if any, are compensable under the constitutional statute and holdings of the Supreme Court. The relators have made claims herein and under the statutes which apply they are entitled to a judicial inquiry before a jury as to whether the elimination of access has resulted in damages to them for which they may be enentitled to compensation under the holdings of the Supreme Court and the constitutional provisions.

The relators did not specify their damages in their petition but the court is of the opinion this was not necessary because under the provisions of the statute and the initial ordinances enacted by the city all that is required is that they make their claims for damages within the period set forth, which they have done. The provisions for judicial inquiry under Chapter 727, Revised Code, indicates that there may be instances where after judicial inquiry it could be found by a jury that no damages existed. This is particularly true of the provisions of Section 727.27, Revised Code, that taxation of costs is provided for in the event the jury finds no damages. It would thus appear that the Legislature, in enacting Section 727.24, Revised Code, distinguishes situations wherein abutting property owners may not have any damages resulting from the improvement even though they file a claim for the same. If the jury upon making judicial inquiry finds there is damages then it is for the jury's determination to set the amount under the proper instructions of the court.

The court will therefore not make a determination at this time as to whether or not there has been damages but will simply find that sufficient evidence has been produced to have the claims of the relators judicially inquired into by a jury to determine whether there has been damages and if so to set the amount.

It is noted that in case of *Preston, Dir.* v. *Weiler,* 118 Ohio

App. 305, the Court of Appeals reversed a finding of the Common Pleas Court that there had been a taking in view of the elimination of access, and the court at page 312 stated that "* * * as a matter of law the record does not show a 'taking,' and therefore there was no basis for a verdict on the value of property taken, * * *." This decision of the Court of Appeals was reviewed by the Supreme Court in *Preston, Dir.*, v. *Weiler*, 175 Ohio St. 107, in which the Supreme Court reversed the decision of the Court of Appeals. It would appear that the Supreme Court by its decision in reversing the Court of Appeals determined that whether or not there has been a taking is a question of fact and not a determination of a matter of law as the Court of Appeals had decided.

4. Is mandamus a proper remedy here as to relators' rights as abutting property owners?

A writ of mandamus will not be issued where the petitioner has available an adequate remedy at law or in equity. *State, ex rel. Stanley*, v. *Cook, Supt. of Banks*, 146 Ohio St. 348; *State, ex rel. Juhlman*, v. *Conners*, 122 Ohio St. 355; and 35 Ohio Jurisprudence 2d, Mandamus, Sections 57 and 74. It is further noted that in the case of *State, ex rel. McKay*, v. *Kauer, Dir., supra* (156 Ohio St. 347), the second paragraph of the syllabus reads as follows:

"Where the grade of a street constituting a part of a state highway has been established and the owner of the property abutting thereon has improved his property in reliance upon and in conformity to such grade, and thereafter a highway improvement is made upon such street by the Director of Highways of the state in accordance with legally approved plans and specifications whereby the width of the street or highway is narrowed and the grade of the remainder is substantially lowered from the former grade to such extent that there is no physical access to or from the property to the street, the owner of such property suffers a "taking" of his property and is entitled to compensation by way of damages from the state to the extent of his loss, even though no part of the physical property is taken or disturbed."

Also in the case of *Burton, Director of Law*, v. *Powers*, 124 Ohio St. 564, being an action in mandamus, the following is the syllabus:

"When an ordinance providing for change of grade re-

quires the director of law of a city to make application for a jury in the manner provided by law, for the purpose of determining the damages resulting to property by reason of such change of grade, within ten days after completion of such improvement, such improvement is completed when the change of grade has been effected, and all other improvements necessary or incident thereto have been completed, except those of minor importance, which will in no wise affect either the damage or the grade."

It would therefore appear that a damage suit is not an adequate remedy or substitute for a mandamus suit under the facts herein. In this case the respondents have rejected the claims of the relators by the action of the director of law and not by judicial inquiry by refusing to include the names of the relators in the application to assess compensation. Whether the relators have a right to a separate action for damages need not be decided here since the provisions of Section 727.24, Revised Code, give them the right to judicial inquiry as the city has done as to other property owners.

It will therefore be the finding of the court that the action in mandamus is a proper remedy herein relative to the relators' rights.

The court will therefore find that there has been sufficient evidence presented to issue a writ of mandamus directing the city manager and the director of law to file in the case which was filed previously or in a new action setting forth the claims of the relators and asking for a determination of the claims by a jury.

In conclusion the court finds:

1. That the relators are abutting property owners.

2. That the city followed the procedure under the provisions of Chapters 4957 and 727, Revised Code, in acquiring the property in question and that said sections apply to the relators' rights herein.

3. That the relators are entitled to a determination of their claims made by a jury by means of judicial inquiry.

4. That an action in mandamus is a proper remedy for relators' relief.

The court therefore will allow the writ to issue and final judgment to be entered for the relators.

*Judgment accordingly.*